[No. 11442.   In Bank. — December 3, 1886.]

## IN THE MATTER OF THE DISBARMENT OF GEORGE W. TYLER.

ATTORNEY AT LAW — PROCEEDING TO DISBAR — UNPROFESSIONAL CONDUCT — VIOLATION OF DUTY TO CLIENT. — On a review of the facts, *held*, that the respondent had been guilty of a violation of his duty as attorney and counselor, and of his oath of office as such, and that he be suspended from practice for the period of two years, and until the payment of a certain judgment referred to in the opinion.

ID. — NEW TRIAL. — A motion for a new trial is not a proper proceeding in such a case.

PROCEEDING for the disbarment of an attorney. The facts are stated in the opinion of the court.

*Pillsbury & Blanding*, for Complainant.

*James L. Crittenden*, for Respondent.

THORNTON, J. — This is an application for the disbarment of George W. Tyler. The accusation is preferred by J. M. Hogan, in which it is stated that he (Hogan) was the plaintiff, and sued Tyler, the defendant, in an action entitled J. M. Hogan *v.* George W. Tyler, which has been heard and finally determined in this court; that on the 30th of March, 1882, he recovered a judgment in said action against Tyler in the Superior Court of the city and county of San Francisco in the sum of $3,862, and $284.10 costs, with interest thereon from date of judgment; that Tyler, on the 19th of September, 1882, appealed from this judgment to this court, which appeal was determined in this court on June 24, 1885, by affirming the judgment; that thereafter a *remittitur* was issued in the cause, and was filed and docketed in the above-named Superior Court on July 30, 1885; that payment of said judgment has been demanded of said Tyler, upon execution issued thereon since the filing of the said *remittitur;* that Tyler has failed and refused to

pay the same, and no part of it has been paid; that upon
said appeal Tyler procured an undertaking to stay exe-
cution on said judgment to be given, and execution
thereon was stayed by virtue of this undertaking pending
said appeal; that the sureties on said undertaking, and
each of them, is wholly irresponsible financially, and
entirely unable to respond in damages; that each of
them was so irresponsible when the said undertaking
was given, and that this was then well known to Tyler;
that he (Tyler) procured said sureties to make such
undertaking, well knowing that they were worthless, and
with intent to evade the law requiring such undertak-
ing; that the money for which the judgment above
referred to was had and recovered in the action above
stated against Tyler, to wit, the sum of $3,862, was by
him theretofore collected and received as the agent and
attorney of the complainant (Hogan), and which he
failed and refused to pay over to complainant before the
commencement of said action, all of which will more
fully appear by the transcript on appeal of said cause to
this court, numbered 8744 of the records thereof, to
which special reference is made, and which is asked to
be taken and considered as a part of this accusation.

Complainant charges that Tyler is and was at all times
hereinafter mentioned an attorney and counselor of this
court, and that he has willfully violated his duties as
such attorney and counselor, and has been guilty of un-
professional conduct, more particularly in this:—

1. That on or about the 3d of June, 1880, Tyler, in
this state, agreed to act as the attorney of complainant
in the collection of certain money, the sum sued for and
recovered in the action hereinbefore mentioned, and by
reason of such employment received from complainant
certain policies of insurance, a promissory note, and an
authority in writing to receive said money; that Tyler
thereafter collected said money by virtue of said employ-
ment and the confidence reposed in him as such attor-

ney; that he (Tyler) violated the confidence so reposed in him and his duties as attorney, and practiced deceit upon complainant concerning said money, by instigating and procuring a suit to be brought against complainant and himself by one Frederick N. Hedge in the Superior Court of the city and county of San Francisco, to recover the said money, and to defraud complainant thereof, and concealed from complainant the facts concerning said suit, and converted said money to his own use, and has failed and refused to pay over this money to complainant.

2. That on or about August 6, 1880, the said Tyler did willfully violate his duty as an attorney and counselor at law, and the confidence reposed in him as such by complainant, in this: that Tyler, being then the attorney and in the possession of $3,862 of the moneys of this complainant which he had theretofore collected for complainant as his attorney, and contriving to cheat and defraud complainant, did instigate and procure a suit to be commenced in the Superior Court above mentioned, by Frederick N. Hedge, against himself and complainant, for the recovery of the money above mentioned, and did procure said Hedge to falsely represent and allege to said court in his complaint in that action that he (Tyler) threatened to pay said money over to complainant unless such action was instituted, and wrongfully and without cause to ask said court in said complaint to enjoin and restrain Tyler from paying over said money to complainant before the termination of said action, whereas in fact Tyler had then no intention of paying over said money to complainant, and thereby Tyler sought to mislead said Superior Court and the judges thereof by a false statement of fact, and failed to maintain the respect due by him to said court and its officers as an attorney of said court.

3. That prior to the sixth day of August, 1880, Tyler had collected the money for complainant as above stated

as his attorney, agent, and trustee, and held the same as such; that on or about the said last-named day, and while he was the attorney, agent, and trustee of complainant, and without complainant's knowledge, Tyler did instigate, encourage, and procure said Hedge to commence the action above mentioned against complainant and himself, and did thereafter encourage and procure said Hedge to continue the prosecution of said action, and did procure the said action to be commenced and continued with intent to cheat and defraud said complainant, and to prevent said money from coming to the complainant, and with the corrupt motive to thereby wrongfully acquire said money, and the whole thereof; that Tyler did at all times have a corrupt interest in said action and the result thereof, which interest was hostile to complainant, and Tyler was thereby making use of said Hedge to hide and conceal such interest, and to deceive and mislead this complainant, and did then and there at all times counsel and maintain said action, well knowing that the same was illegal and unjust, and was calculated and intended to cheat and defraud complainant, and in so doing he was violating his duty and obligations to complainant.

4. The accusation in the fourth count or paragraph sets forth the same facts as to collecting, receiving, and holding the money aforesaid, the instigation and procurement of Hedge to commence the action against complainant and Tyler, the procurement of Hedge to continue the prosecution of said action, the intent with which Tyler procured it to be commenced and continued, and the motive thereof, as are contained in the third count or paragraph; and in addition, states that prior to the commencement, to wit, on the thirtieth day of July, 1880, Tyler being then the attorney, agent, and trustee of complainant, did, without the knowledge or consent of complainant, enter into an arrangement with said Hedge for the commencement and prosecution of said

action, whereby it was agreed that Tyler should receive one third of all said moneys so to be received of complainant, and thereafter, on October 7, 1880, the said Hedge, at the instance and procurement of Tyler, sold and assigned all his right in said suit ostensibly to one Walter C. Dimmick, but in reality for the interest and benefit of Tyler, and this assignment was so made to Dimmick with intent to cheat and deceive complainant; that Tyler never informed complainant during the pendency of the action that he had an interest therein, or that he had instigated or maintained the same.

5. That on July 30, 1880, Tyler was an attorney and counselor of this court, and on that day, and by virtue of his position as such attorney and counselor, he did, with the consent and at the request of complainant, collect and receive the sum of money belonging to complainant, and did thereafter have and hold the same as the agent and trustee of complainant, and not otherwise, and while so holding and retaining said money of complainant, and without his knowledge or consent, Tyler on said thirtieth day of July did enter into an agreement with one Frederick N. Hedge to obtain and recover said money from complainant, Tyler to have one third of all that might be so recovered, and to that end he (Tyler) caused a complaint to be drawn and an action to be commenced thereon on August 6, 1880, in the court aforesaid, for the recovery of said money, wherein Hedge was made plaintiff and Tyler and complainant defendants; that he (Tyler) did thereafter secretly prosecute this action until it was on August 30, 1881, dismissed at the instance of Tyler, to avoid a trial thereof; that on October 7, 1880, Tyler procured Hedge to make a transfer of all his interest in said action, ostensibly to one Walter C. Dimmick, but in reality for the benefit of Tyler; that Tyler instigated and prosecuted said action during the pendency thereof and until August 30, 1881, without the knowledge or consent of complainant, and

during all times failed and neglected to inform complainant of the facts touching the action and his connection therewith; that during said times and prior to September 15, 1881, Tyler converted all of said money to his own use, and has entirely failed to pay over said money or any part thereof to this complainant; that Tyler has squandered said money and is now unable to pay the same, and complainant is remediless in the premises; that by reason of the matters next hereinbefore stated, complainant charges that Tyler has been guilty of unprofessional conduct as an attorney, and as such has violated his duties and the confidence reposed in him by complainant, and has practiced deceit upon complainant, and has encouraged and instigated the commencement and prosecution of an action, to wit, the said suit of Hedge *v.* Tyler and complainant, from a corrupt motive and interest, and is unworthy to be permitted to practice as an attorney and counselor of this court.

We have carefully examined and weighed the evidence, and consider the following facts established by it: The respondent Tyler had been for many years prior to the 15th of May, 1880, and since that date, an attorney and counselor at law, duly admitted to practice by this court, and authorized to practice his profession in all the courts of this state, and since his admission has been engaged in practice in this court and other courts of this state; that J. M. Hogan on the 15th of May, 1880, and for some time prior thereto, had in his possession a promissory note executed by Samuel Langdon, and two policies of insurance which had been issued upon the life of Langdon. The note and policies of insurance are described in a certain paper which will be hereinafter inserted, executed by respondent on the third day of June, 1880, and delivered to Hogan. Hogan had received the note and policies above mentioned from Mrs. Charlotte Hedge in the capacity of her attorney and legal adviser. He was then practicing as an attorney and counselor at law,

under an admission by one of the district courts of the state. Mrs. Hedge was the guardian of her two sons, George H. and Frederick N. Hedge; the note of Langdon was made payable to her as such guardian, and was executed for a loan of money held by Mrs. Hedge as part of the estate of her two sons above mentioned. The policies of insurance had been assigned to her by Langdon as security for the payment of his note. While Hogan was holding this note and the policies above mentioned, he lent Frederick N. Hedge various sums of money, in all amounting to five hundred dollars, and not long after Hedge became of age Hogan purchased of him all his interest in the note and policies above mentioned and in the estate of his deceased father, Nelson Hedge, for the sum of $850, which sum was made up of the five hundred dollars theretofore lent him, and $350 paid him at the time. At the time of this purchase Hogan took from Frederick Hedge an assignment to him of the interest so purchased. This assignment bears date the 29th of March, 1880. Prior to this assignment Langdon had died. Mrs. Hedge had before the fifteenth day of May, 1880, demanded of Hogan the note and policies above mentioned, and he had refused to deliver them to her, on the ground that he was part owner of them by virtue of his purchase and assignment from Frederick Hedge, and had as much right to their custody as Mrs. Hedge. The claim of Hogan became known to the insurance companies who had issued the policies. Mrs. Hedge was demanding of the companies the payment of the policies, and Hogan had notified them that he had an interest in them, and warned them not to pay to Mrs. Hedge. In this condition of affairs, the companies were unwilling to pay until it was determined in some way to whom they could pay so as to procure a discharge from their liability. Thus matters stood when Mrs. Hedge employed the respondent to get the note and policies from Hogan, without recourse to legal proceedings if it could be so effected,

or by such recourse if requisite. The respondent, after such employment, promptly addressed a letter to Hogan, of which the following is a copy: —

"SAN FRANCISCO, May 15, 1880.

"J. M. HOGAN, ESQ., — *Dear Sir:* Your letters to Mrs. Hedge and George Hedge have been placed in my hands to answer. I will say that I have been employed as counsel for Mrs. H. There is no desire on her part or mine to deprive any one of the money coming to them. The money or the ten thousand dollars must come through Mrs. Hedge. It will come into my hands with your consent, and then every one shall have his own. Please call and see me when you come down.

"Very respectfully,

"GEO. W. TYLER."

This communication seems to have been addressed to Hogan at Stockton, of which city he was then and still is a resident, and soon after its receipt Hogan came to San Francisco and had an interview with Tyler in regard to the subject of Tyler's letter. The result of that interview was that Hogan surrendered the note and policies to Tyler, and gave his consent in writing that the money due on the policies should be paid to respondent. During the interview above mentioned Hogan explained fully to Tyler his relation to and claim on the note and policies, substantially as above set forth, and gave him a history of the mode in which he had acquired such claim. Upon the surrender of the possession of these papers to Tyler, he signed and delivered to Hogan a paper, of which the following is a copy: —

"This certifies that I have this third day of June, A. D. 1880, received from J. M. Hogan policy number 54,115, issued upon the life of Samuel Langdon, by the Union Mutual Life Insurance Company of Maine, for the sum of ten thousand dollars, dated January 18, 1875, assigned to Charlotte Hedge; and also policy number 60,350, issued upon the life of Samuel Langdon by the New

England Mutual Life Insurance Company of Boston, Massachusetts, for the sum of five thousand dollars, dated April 26, 1878, and assigned to Charlotte Hedge. Also a promissory note made by Samuel Langdon, payable to Charlotte Hedge or order, guardian of George H. and Frederick N. Hedge, for the principal sum of $8,175.66 payable one day after date, bearing interest at one per cent per month, credited on back thereof with payments: January 11, 1880, $35.69; January 27, 1880, $200; February 11, 1880, $300. I have received foregoing papers at the request of said Charlotte Hedge that said J. M. Hogan should deliver same to me as her attorney; and whereas, said J. M. Hogan claims to be the owner of and entitled to receive the one half of all moneys due, payable, received, or collected upon said promissory note by said Charlotte Hedge or any person, and to have a lien interest upon said two insurance policies, as collateral security for payment of said promissory note.

"Therefore, in consideration of delivery to me of said papers, and of request of said Hogan that I so act in the matter, I do promise and agree with said Hogan that I will receive from said two insurance companies whatever money is paid by either said insurance companies upon said policies, and to the extent of the one half of the amount unpaid on said promissory note, and which said one half at this date amounts to about four thousand six hundred dollars, I agree to hold and retain the same. Inasmuch as I have been notified that Frederick N. Hedge has, or claims to have, some interest in said money, I agree to notify him of the payment of the same to me, and if he does not within ten days from receiving such notice bring some suit against said Hogan to determine the right to said money, I agree to pay the same to said Hogan on demand.

"In case such suit is brought, I will pay at once to whomsoever the court shall decide to be entitled to the same.                          GEO. W. TYLER,
                                  "636 Clay Street."

It is contended that Tyler, at the same time that he executed the foregoing paper, also agreed with Hogan as his attorney and counselor at law to pursuade and induce Frederick N. Hedge not to bring a suit for the portion of the money claimed by Hogan, but we are not satisfied that Tyler's engagement extended any further than set forth in the paper just above recited. At the same time it was agreed that Tyler was to receive of Hogan one hundred dollars of the portion claimed by Hogan when collected,—whether as a payment for services to Hogan as his attorney or as a gift to Tyler does not clearly appear. Hogan testifies that it was to be paid for such services; Tyler says it was a gift from Hogan, and that he distinctly refused to be his attorney.

Tyler thus procured the possession of the note and policies, and, invested with the authority of Mrs. Hedge and the further consent of Hogan to collect the money due on the policies, the money was paid by the insurance companies to Tyler.

On the 30th of July, 1880, Tyler writes Hogan that on that day he had received from "the insurance company $8,260.05, and have this day notified Frederick Hedge of the fact, and unless he sues in ten days from to-day, I will forward the one half to you (less $100), as agreed.

On the same day that Tyler wrote as above stated to Hogan he received from Frederick N. Hedge the following paper:—

"I hereby empower George W. Tyler to take such steps as may be necessary to set aside and cancel an assignment of my interest in the estate of my father, Nelson Hedge, to J. M. Hogan, and to secure my interest in said estate. I agree to pay said Tyler one third of all the moneys received by me for his services, and he is to receive nothing if he recovers nothing; said Tyler is to pay expenses of suit, and deduct same from amount recovered.                    FRED. N. HEDGE.

"July 30, 1880."

On the 6th of August, 1880, an action was commenced in the Superior Court for the city and county of San Francisco, by Frederick N. Hedge, as plaintiff, against J. M. Hogan and respondent, as defendants, to cancel and annul the above-mentioned assignment of Hedge to Hogan, and to enjoin Tyler from paying over to Hogan more than $850 with interest, until the final termination of the action, and for judgment against Tyler for the moneys received by him, less the sum above-mentioned, etc. The complaint in this action was prepared by the respondent, was filed with the clerk of the court aforesaid on the date last above mentioned, having the name of H. H. Reid signed thereto as attorney for plaintiff. Tyler procured Reid to sign his name as attorney for plaintiff, but the action was really commenced by Tyler, and was to be managed, controlled, and prosecuted by him. The complaint set forth that plaintiff had been overreached and cheated by Hogan in the purchase and transfer of his interest in the note of Langdon and the policies of insurance, and that the same had been effected by Hogan when he (plaintiff) was intoxicated.

On the same day on which this complaint was filed, Tyler wrote Hogan, inclosing in the letter a check for $888.

At or about the same time he informed Hogan that Frederick Hedge had commenced suit against him. Hogan received the money ($888) on the check and kept it. He acknowledged receipt of Tyler's letter inclosing the check on the 7th of August, 1880, and states in his reply to this letter that he does not admit "that $888 is the full amount of my claim, nor the full amount of the money in your hands, received by you from the Union Mutual Life Insurance Company, belonging to me; on the contrary, the one half of that $8,260 belongs to me, and you will please not deliver to Frederick Hedge or any other person, except by order of court or upon my order." This letter thus proceeds: "I am obliged to you for noti-

fying me that Fred. has brought suit; you did not tell me when the suit was instituted, nor who are parties defendant. Please let me know. If you are sole defendant, I will defend you in the action. I will get an attorney in San Francisco to do so. When was you served with papers? Please send me a copy of complaint."

To this letter Tyler replied. This reply is written on the sheet which contains Hogan's letter of August 7th. It is without date, and no doubt written soon after the receipt of the letter to which it is a reply, and it is as follows:—

"J. M. Hogan, Esq.: I am not sole defendant. You and I are defendants. Of course I know $888 is not what you claim, and my receipt to you is security that I will only pay the money to whomsoever the court shall order it paid.

"I sent you the money, for the reason that as to that amount there was no dispute, and therefore no reason for my keeping it. I understand you will be served in a few days. I shall simply answer that the money is in my hands, and ready to be paid over to either, as court may direct.                    Yours truly,

                              "Tyler."

Soon after receiving this letter, Hogan came to San Francisco and had an interview with Tyler. He told Tyler that he would employ E. S. Pillsbury, Esq., an attorney of San Francisco, to appear and defend them in the Hedge suit, to which Tyler consented.

On demurrer filed by Pillsbury on behalf of Tyler, it was held Tyler was not a necessary party to the action. Tyler thus dropped out of the action as a party thereto, as far as shown by the record. Hogan answered, denying *inter alia* all allegations of fraud, circumvention, and concealment, and that he acquired his interest from said Hedge while he was in a state of intoxication.

While the cause of Hedge *v.* Hogan was pending, some depositions were to be taken of certain witnesses at

Stockton.   On these occasions, Tyler appeared to represent plaintiff, and Reid made no appearance.

On the 26th of February, 1881, Tyler addressed a note to Hogan in the following words: —

"J. M. Hogan, Esq., — *Dear Sir:* One Walter C. Dimmick has notified me and left with me an assignment in writing from Frederick N. Hedge to him, of all interest in the suit of Hedge *vs.* you and me.   I hereby notify you of that fact so you may be informed.

"Very truly,

"Geo. W. Tyler."

The above-named Dimmick, a brother-in-law of Tyler, who resided in Colorado, was afterwards substituted as plaintiff in this action in place of Hedge.

The case was called for trial on the 30th of August, 1881.   The respondent appeared for plaintiff and moved on his own affidavit for a postponement of the trial. This was opposed by a counter-affidavit of Hogan.   The court continued the cause until the Monday following, upon payment by plaintiff of defendant's witness fees, amounting to sixteen dollars.   Whereupon the respondent for plaintiff moved for a dismissal of the action, and on this motion a dismissal was ordered by the court.

That this action was encouraged and instigated by the respondent, and was maintained at his expense and by his efforts, we have no doubt.   That he was personally interested in the cause, and was to share in the recovery, if any was had, the testimony distinctly establishes.

In our judgment, the evidence shows that Tyler never informed Hogan of his contract with Hedge, or of his connection with the suit brought by the latter, and that he prosecuted that suit, concealing from Hogan his contract with Hedge, and his real connection with the suit until the time it was dismissed.   .

On the trial of this cause one reason was alleged by Tyler for dismissing the action above mentioned, while

the complainant contended that it was dismissed for another and a different one. Whether it was dismissed for the reason set forth by respondent, or for the reason as contended by complainant, is, in our view, entirely immaterial. It clearly appears that the cause was never tried, and that it was dismissed on the motion of respondent, who acted for plaintiff in making the motion, and that respondent was personally interested in whatever money might have been recovered in the action.

As the reason for which the suit was dismissed by Tyler is immaterial, the depositions of Hedge, Clark, and Shurtleff may be excluded from consideration.

Soon after the dismissal of the action of Hedge v. Hogan, Hogan demanded payment of the portion of money coming to him on the policies above mentioned, and which Tyler had retained in his hands under the agreement above set forth. Tyler refused to pay him anything. Thereupon an action was brought by Hogan as plaintiff against Tyler as defendant, to recover it. This action was instituted in the Superior Court for the city and county of San Francisco, and was commenced on the 15th of September, 1881.

The complaint therein contained two counts: one based on the averment that the defendant had collected a certain sum as agent for plaintiff; the other on an averment that the defendant had collected a certain sum of money as attorney at law for plaintiff. In both counts it was averred that the money had been demanded of defendant, and that he had refused to pay. The defendant answered the complaint, denying its material allegations. The cause came on for trial, was regularly tried, and resulted in a verdict for plaintiff for $3,862. The verdict was rendered on the 24th of March, 1882, and on the 25th of the same month judgment was entered on the verdict for $3,865.25, with interest, etc. This judgment was, on appeal, affirmed by this court, and a rehearing on said appeal was by this court in

Bank denied. The *remittitur* was in due time sent from this court to the court below. Subsequently, by letter, Hogan demanded of respondent payment of the amount due on the judgment so affirmed. A reply in writing to this letter was made by respondent, and sent to Hogan, in which, in language of defiance, bitterness, abuse, and insult, he refused to pay the money or any part of it. Afterwards Hogan took steps to have the respondent examined on proceedings supplementary to execution on the judgment aforesaid. Such examination was had, from which it clearly appeared that respondent was totally unable to pay, and that he had converted to his own use and spent the money above referred to, which he had received, and which it had been adjudged was due to and belonged to Hogan.

On the appeal to this court in the above-mentioned cause of Hogan *v.* Tyler, the defendant was desirous of staying the execution of the judgment pending the appeal. To effect this, an undertaking to stay execution was filed, two of the sureties to which were John S. Wheeler and Philip Schenck.

This stay undertaking was in the form and with the conditions prescribed by law. The sureties were irresponsible and without the means of payment when the undertaking was executed by them. Upon the affirmance of the judgment and the rendition of judgment against the sureties on the undertaking, it was found that they were entirely without means to pay any part of the judgment.

The evidence satisfies us that respondent Tyler knew, when the undertaking was executed, that the sureties were without means to meet the obligation of the undertaking, and that they were then without ability to respond to any judgment which might be rendered against them on it. We are forced to the conclusion that the respondent by design filed an undertaking, the signers of which were worthless as sureties, with the intent that

it should be worthless to the plaintiff as security, in case the judgment appealed from should be affirmed.

The paper of the 3d of June, 1880, above set forth, executed by Tyler, and delivered by him to Hogan, in which he receipts for the note of Langdon and the policies of insurance, is not only a receipt, but a contract between Tyler and Hogan. The terms of the contract are set forth distinctly in the portion of said paper beginning with the words, "Therefore, in consideration of," etc.

For a consideration expressed in this document, Tyler promises and agrees with Hogan. It so clearly states: "I do promise and agree with said Hogan that I will receive from said two insurance companies whatever money is paid by said insurance companies upon said policies, and to the extent of the one half of the amount unpaid on said promissory note, and which said one half at this date amounts to about four thousand six hundred dollars, I agree to hold and retain the same."

Tyler, having here agreed with Hogan to hold and retain the money thus received, could not pay it over to Mrs. Hedge, for whom it is clear that he was acting as attorney at law. It is evident that he did not intend to recognize any right in his client, Mrs. Hedge, to have any portion of this half which he binds himself to hold and retain.

But the foregoing is not the whole of the agreement. The document sets forth further terms of agreement. It proceeds thus: "Inasmuch as I have been notified that Frederick N. Hedge has or claims to have some interest in said money, I agree to notify him of the payment of the same to me, and if he does not within ten days from receiving such notice bring some suit against said Hogan to determine the right to said money, I agree to pay the same to said Hogan on demand. In case such suit is brought, I will pay at once to whomsoever the court shall decide to be entitled to the same."

In our judgment, the above words show an agreement with Hogan to hold the money on certain conditions, which are thus expressed: If upon his (Tyler's) notifying Frederick Hedge that this half of the money has been paid to him, Hedge does not bring suit for it against Hogan within ten days from the date of receiving such notice, he is to pay it over to Hogan. If suit is brought, and judgment on such suit is rendered in Hogan's favor, he is to pay it to Hogan; if in Hedge's favor, he is to pay it to Hedge.

The legal effect of this agreement is that the money is held, and to be held, and paid over to Hogan if suit is not brought within the time specified, and if suit is brought and determined in Hedge's favor, then to be paid over to Hedge. The money is only to be paid over to Hedge if suit is brought, and judgment passes for him. It turned out that suit was brought, and dismissed. What was the effect of such dismissal? In our judgment, upon such dismissal, as the ten days referred to in the contract had then elapsed, Tyler held the money as the agent of Hogan, and was bound to pay it to him.

This document of the 3d of June certainly shows a contract with Hogan, and a contract of agency with him. Tyler received the half of the money by consent of Hogan, and he was then to hold it as above set forth. He seems to have had no doubt that he had a right to enter into such a contract. It does not appear that there was anything in his employment by Mrs. Hedge, or his relations to Frederick Hedge, which conflicted with it. In fact, Tyler stated that Mrs. Hedge consented that he should keep this money in his hands if Frederick Hedge had an opportunity to litigate the question whether it was to go to him or Hogan.

The claim of Frederick Hedge, if he had any, was regarded in the contract, and a reasonable time was given him to bring the suit to enforce such claim. It does not appear that this contract conflicted with any

duty that he owed to Frederick Hedge. There is evidence that he objected to contracting with Hogan to use his influence with Frederick Hedge or Mrs. Hedge to persuade the former not to sue Hogan for the money which Hogan claimed. Tyler refused to enter into any such agreement with Hogan, and in our judgment no such agreement was made.

From the relation which Tyler sustained to Hogan, it was his duty to make known to him all the facts in relation to his connection with Hedge, his agreement with him, and the relation he bore to the Hedge suit. This he did not do until about the time the suit was dismissed. The information then given was in his affidavit for a continuance.

But, as above stated, the contract entered into does show a contract of agency, trust, and confidence by Tyler with Hogan; and to say that this contract was one in which Tyler became an attorney *de facto*, and not an attorney at law for Hogan, would be making a distinction savoring too much of a mere refinement of words. Tyler was an attorney at law; had been for many years practicing as such when he entered into his contract. He was contracting concerning a matter of difference which might be and did become a matter of litigation. Tyler collected the money as attorney at law,—a business in which attorneys at law are much engaged. He collected it with the consent and by the authority of Hogan, on the conditions named in the contract, and by this contract, and on its terms, he became the agent and attorney of Hogan to collect and hold the money, and pay it over to him (Hogan) on the conditions named in such contract. If Hedge had brought the suit for this money within ten days, and it had been adjudged in the action that he (Hedge) was entitled to the money, Tyler would then have ceased to be the attorney of Hogan. The suit brought by Tyler for Hedge was dismissed. Tyler's responsibility to Hogan, then, never ceased.

We think that the testimony justifies us in holding that he was the attorney at law of Hogan on the terms of the contract which was made between them.

An exception was made to the ruling of the referee who took the testimony in this case, by which he stopped the cross-examination of one of the witnesses of complainant. The cross-examination of the witness had in our judgment been unnecessarily prolonged, and the referee acted within a proper discretion in stopping it as he did.

On this ruling being made by the referee, counsel for the respondent, who was conducting the cross-examination, retired from the cause, and respondent then asked for time to procure other counsel. The referee said that it was not long before the noon recess, that the cause should proceed until that time, when respondent might procure counsel. If we could perceive that respondent was injured by this ruling of the referee, we would interfere for his relief, but we do not see that he did suffer any injury.

We will say further, that in bringing the action of Hedge v. Hogan and Tyler, the respondent was really on both sides of the case. He was really attorney for the plaintiff, and interested in any recovery of money by plaintiff, and was himself a defendant in the action. By this conduct he violated his obligations to Hogan under the contract as his agent and attorney, and violated his duties as attorney at law. In the relation of agent, which he bore to Hogan under his contract, it was in violation of his duty to Hogan as his principal to assume an attitude antagonistic to him without his knowledge and consent.

We are of opinion that the accusation in regard to the undertaking on appeal, and the portion of the accusation numbered 1 is sustained by the evidence herein.

SHARPSTEIN, J., MORRISON, C. J., and McKINSTRY, J., concurred.

McKee, J., concurring. — I concur in the opinion on the sole ground that the accusation is sufficiently sustained by the evidence of the acts and conduct of the respondent, in connection with the judgment and undertaking on appeal in the case of Hogan *v.* Tyler, referred to in the prevailing opinion.

Myrick, J., concurring. — From the statement contained in the foregoing opinion, it appears that the respondent, G. W. Tyler, is charged in this proceeding with having agreed to act as the attorney for complainant in the collection of certain money, and by reason of such employment received from complainant certain policies of insurance, a promissory note, and an authority in writing to receive said money; that thereafter he collected said money by virtue of said employment, and the confidence reposed in him as such attorney, etc. It will be remembered that Mrs. Hedge had held the note and policies as guardian of her two sons (to whose estates the note belonged), and that she had placed them in the hands of Mr. Hogan as her attorney; that after one of the sons attained majority, Mr. Hogan, for the consideration of some $850, took an assignment of his interest, amounting to about $4,500; that Mr. Hogan then asserted his right to retain the possession of the note and policies, and refused to surrender them to Mrs. Hedge, from whom he had received them as her attorney; that Mrs. Hedge and the son claimed the latter had been overreached in the matter of the assignment, and Mrs. Hedge employed Mr. Tyler to get the note and policies from Mr. Hogan, of which employment the latter had notice. Mrs. Hedge was unable to recover the money on the policies, as they were out of her possession, and Mr. Hogan had given notice to the companies not to pay to her; neither would the companies pay to Mr. Hogan. Thereupon, at an interview had between Mr. Tyler and Mr. Hogan, the latter delivered the policies

and note to the former, and Mr. Tyler gave his receipt therefor, in which he stated: "I have received foregoing papers, at the request of Charlotte Hedge, that said J. M. Hogan should deliver same to me as her attorney." The policies were paid without suits. It seems clear to me that as between Mrs. Hedge and Mr. Hogan, Mr. Tyler was the attorney of the former, of which Mr. Hogan had notice, and that he (Hogan) delivered the papers to Tyler at the request and as the attorney of Mrs. Hedge, and not as the attorney of himself; that the allegation of employment of Tyler by Hogan as his attorney at law is not sustained. Whatever may have been the duty of Mr. Tyler to Mr. Hogan as attorney in fact, or agent, is not now for consideration; I am dealing only with his duty as an attorney at law.

In regard to the giving of the undertaking on appeal, I am of opinion that Mr. Tyler violated his duty and obligation as an attorney at law. Hogan had recovered a judgment against him; he gave notice of appeal, and caused an undertaking to be executed and filed. The statute requires that the undertaking be accompanied with the affidavit of each surety that he is worth the sum specified in the undertaking. In my opinion, Mr. Tyler knew that the surety, Wheeler, was insolvent, and with that knowledge, procured him to join in the execution of the undertaking. His object, doubtless, was to prevent Hogan from realizing the fruits of a successful litigation. In so doing, he violated his duty as laid down in subdivision 4, section 282, Code of Civil Procedure. The acts done by Mr. Tyler and Wheeler in regard to the deed from the former to the latter do not render obscure the real transaction and its purpose.

While I am of opinion of the acts of the respondent deserve censure and the imposition of a penalty, I am not in favor of his removal, or his suspension for an extended period. I think the penalty of suspension for six months sufficient; but there should be added the

provision that the suspension continue thereafter until the object of requiring an undertaking, viz., payment of the judgment, interest, and costs, in case of affirmance, be accomplished.

THORNTON, J., SHARPSTEIN, J., MORRISON, C. J., McKINSTRY, J., and McKEE, J. — All the justices of this court being of the opinion that the evidence proves the respondent guilty of a violation of his duty as attorney and counselor, and of his oath of office as such, and that the allegations in the accusation with respect to his conduct in procuring and filing the undertaking to stay execution on appeal from the judgment in the case of Hogan v. Tyler have been fully proved, and no four of the justices concurring in any other judgment than that hereinafter stated, but five of the justices, after full consultation, having agreed on the judgment following, —

It is ordered and adjudged that respondent George W. Tyler be deprived of the right to practice as attorney or counselor in any and all the courts of this state, and be suspended from practicing as attorney or counselor at law in any of said courts, for the period of two years from the date of the entry hereof, and until the judgment in favor of J. M. Hogan against the said respondent, mentioned and described in the accusation, shall be fully satisfied and paid, if the same shall not have been satisfied during such period of two years.

A motion for a new trial and a rehearing having been made, the following opinion thereon was rendered on the 26th of February, 1887: —

The COURT. — The motion for a new trial is not the proper remedy in this cause. Considered as a petition for a rehearing, we see no reason to grant it.

Motion for a new trial and rehearing denied.