[L.A. No. 31290. Jan. 12, 1981.]

RIDER REYNOLDS LEWIS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Rider Reynolds Lewis, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Scott J. Drexel for Respondent.

OPINION

THE COURT—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar (disciplinary board) that petitioner be suspended from the practice of law for a period of thirty days, but that such suspension be stayed and petitioner placed on probation for a period of one year.

## I.

Petitioner was admitted to the practice of law in California in June of 1972 and has no prior disciplinary record. He was a solo practitioner at

all times relevant to this inquiry. He is charged with violating his oath and duties as an attorney (Bus. & Prof. Code, § 6067) in that he (1) negligently and improperly conducted the administration of an estate without any previous probate experience and without associating or consulting a sufficiently experienced attorney (Rules Prof. Conduct, rule 6-101[1]); (2) obtained a loan from a client without appropriate disclosure and without the client's written consent (rule 5-101[2]); and (3) failed to maintain complete and accurate records of funds belonging to a client (rule 8-101(B)(3)[3]).[4]

The facts of this matter are not in dispute.[5] In November of 1973, petitioner was retained by Edward Vacha, an inmate at the state prison in

---

[1]Rule 6-101 became effective on January 1, 1975, and provides as follows: "A member of the State Bar shall not wilfully or habitually (1) Perform legal services for a client or clients if he knows or reasonably should know that he does not possess the learning and skill ordinarily possessed by lawyers in good standing who perform, but do not specialize in, similar services practicing in the same or similar locality and under similar circumstances unless he associates or, where appropriate, professionally consults another lawyer who he reasonably believes does possess the requisite learning and skill;

"(2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed.

"The good faith of an attorney is a matter to be considered in determining whether acts done through ignorance or mistake warrant imposition of discipline under Rule 6-101."

All subsequent rule references are to the Rules of Professional Conduct.

[2]Rule 5-101 provides as follows: "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

Rule 5-101 became effective on January 1, 1975, replacing former rule 4 which stated: "A member of the State Bar shall not acquire an interest adverse to a client."

[3]Rule 8-101(B) provides in relevant part: "A member of the State Bar shall:

". . . . . . . . . . . . . . . . . .

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member of the State Bar and render appropriate accounts to his client regarding them. . . ."

[4]Petitioner was also charged with a violation of former rule 9 based on the fact that he withdrew from estate funds and paid to himself a $20,000 fee which he had earned from the decedent's husband on an unrelated matter. Since it appears that this action was occasioned by petitioner's total lack of familiarity with probate law, it will be considered in the context of petitioner's asserted violation of rule 6-101, rather than being treated separately as a misappropriation of client funds.

[5]The petitioner has stipulated to the disciplinary board's findings of fact with minor exceptions not relevant here.

Chino, to handle the administration of Vacha's deceased wife's estate. The estate was valued at approximately $100,000 and consisted primarily of some securities and a note secured by a deed of trust. Shortly thereafter, petitioner also agreed to make some contacts aimed at securing Vacha's release on parole.

In January of 1974, petitioner had himself appointed as administrator of the estate of Joan Cullinane Vacha. Having no previous experience in probate matters, he selected Thomas Middleton, an attorney familiar with probate practice, to serve as the attorney for the estate. Middleton prepared the petition to the probate court requesting petitioner's appointment as administrator. He also caused to be published the required notice to creditors of the estate. Thereafter, however, petitioner did not consult Middleton, who rendered no further services to the estate.

Over the following six months, petitioner made various contacts which resulted in a parole hearing for Vacha in July of 1974. At that hearing, it was determined that Vacha should be released on parole in October. Petitioner and Vacha then met at Chino to discuss petitioner's fee for securing Vacha's release. Petitioner requested and Vacha agreed to a fee of $20,000.[6] Vacha informed petitioner that he did not have sufficient funds to pay the fee, but that petitioner could withdraw the $20,000 from the estate proceeds since Vacha was the sole heir.

In September, petitioner, as administrator of Joan Vacha's estate, obtained an order from the probate court authorizing the sale of certain securities belonging to the estate having an approximate value of $38,000. Although the petition to the probate court did not so state, one of petitioner's purposes in selling the securities was to obtain sufficient funds with which to pay himself the $20,000 fee which had been agreed upon.[7] Following the sale, petitioner did not place the proceeds in an interest-bearing account or any account bearing the name of the estate or himself as the administrator of the estate. Instead, he deposited the entire amount in his clients' trust fund checking account. Over the next two months, he disbursed to himself a total of $20,000 from the account in satisfaction of the fee previously agreed to by Vacha. He also dis-

---

[6]Petitioner was originally charged by respondent State Bar with having "wilfully charged and collected an unconscionable fee" in violation of rule 2-107. The disciplinary board, however, found to the contrary and this court does not address the issue.

[7]The petition to the probate court stated that the authorization to sell was necessary due to the declining value of the securities. The truth of this assertion is not disputed.

bursed approximately $14,000 to Vacha over a seven-month period for a variety of living expenses and a new automobile.[8] At no time did petitioner seek probate court approval for any of these disbursements.

In November of 1974, Vacha orally authorized petitioner to borrow up to $10,000 from the estate proceeds at 10 percent interest. That same month, petitioner actually borrowed $4,000 from the estate proceeds. Petitioner did not borrow the previously discussed amount of $10,000 because the estate proceeds left in the client's trust account were insufficient. The loan was unsecured. Vacha never gave written consent for the loan, nor did petitioner encourage Vacha to seek independent counsel on the matter. A promissory note evidencing the debt was not executed by petitioner until approximately one month after the $4,000 was withdrawn. Petitioner kept the note in the estate files in his possession rather than delivering it to Vacha.[9]

Petitioner also failed to keep an accurate record of the estate proceeds which he was holding in his client's trust fund account. As a result, in April of 1975, petitioner issued a $500 check to Vacha for living expenses which the bank refused to honor due to insufficient funds in the account.

In August of 1975, Vacha sought and received a probate court order removing petitioner as the administrator of Joan Vacha's estate. It was then discovered that during the 18-month period during which petitioner served as administrator of the estate, he had failed to prepare an inventory of the estate's assets and in addition failed to file any of the required state or federal income, estate, or inheritance tax returns.[10] In fact, petitioner performed no services for the estate after he obtained the probate court approval for the sale of the estate's securities.

The disciplinary board hearing panel found that petitioner's performance in administering the estate of Joan Vacha constituted a violation

---

[8]The probate court in San Diego which presided over the administration of Joan Vacha's estate eventually approved these disbursements as being reasonably necessary for Edward Vacha's support.

[9]There is no contention in this case that petitioner failed or refused to repay the loan. It appears from the record that most of the loan had been repaid by the time of the disciplinary hearing and that petitioner continued to make payments as required under the terms of the note.

[10]Petitioner contended that he did not file any tax returns because he believed that the estate had no net tax liability. It is not disputed that he was correct in this conclusion; he was, however, still required to file appropriate returns.

of rule 6-101 in that, knowing that he did not possess sufficient skill in probate matters, he failed to associate or consult another lawyer who did possess the requisite learning and skill, and that he willfully failed and refused to perform all of the services for which he was retained. The panel further concluded that the manner in which petitioner obtained a personal loan from the estate violated rule 5-101 and that his failure to keep accurate account of the estate proceeds violated rule 8-101(B)(3).

## II.

■ The sole issue presented by this petition is the propriety of the discipline recommended by respondent State Bar. After being notified of the disciplinary recommendation, this court informed petitioner by letter that it would consider imposing discipline in excess of that recommended by the disciplinary board. Petitioner responded in his petition for review, arguing that the recommended discipline was appropriate and adequate under the circumstances.

A review of the record in this case reveals one major area of concern: petitioner's violation of rule 6-101.[11] Since petitioner does not challenge the disciplinary board's finding that he violated the rule,[12] the only issue before the court is the nature of the discipline which should be imposed for the violation based on the facts and circumstances of the case.

This court has long recognized the problems inherent in using disciplinary proceedings to punish attorneys for negligence, mistakes in judgment, or lack of experience or legal knowledge. (See, e.g., *Call* v. *State Bar* (1955) 45 Cal.2d 104, 110-111 [287 P.2d 761]; *Friday* v. *State Bar* (1943) 23 Cal.2d 501, 505-508 [144 P.2d 564].) In *Friday*,

---

[11]See footnote 1, *ante*, page 685.

[12]As noted previously, rule 6-101 became effective on January 1, 1975. Petitioner was retained to handle the probate administration of Joan Vacha's estate in November of 1973, some 13 months before rule 6-101 went into effect. However, petitioner's handling of the case continued for eight months after the effective date of the rule. Prior to the rule's enactment, the only basis on which an attorney could be disciplined for incompetence or a lack of legal skill was the general catch-all statute, Business and Professions Code section 6067, which required every attorney to "faithfully discharge [his] duties...to the best of his knowledge and ability." It is unclear whether that section alone could have supported an action for discipline based on petitioner's conduct in this case.

however, much of the court's expressed concern dealt with the absence of any statute or disciplinary rule permitting the imposition of discipline for "mere ignorance of the law." (*Id.*, at p. 505.) In the case at bar, such authorization is present in the form of rule 6-101.

There is no showing in the instant case that any of petitioner's actions were motivated by bad faith or a desire to benefit himself at the expense of his client.[13] Nearly all of his problems appear to be a direct or indirect result of his complete lack of familiarity with probate law.

Based on petitioner's demonstrated good faith as well as the fact that rule 6-101 only became effective some 13 months after he was retained to handle the probate of the estate,[14] this court adopts the disciplinary board's recommendation that petitioner be suspended for thirty days, but that such suspension be stayed and petitioner placed on probation for one year under the terms and conditions as specified by the State Bar.

**BIRD, C. J.**—I fully concur with the court's opinion in this case. I only wish to note some additional concerns which I have regarding rule 6-101 of the Rules of Professional Conduct.[1]

Rule 6-101 seems to provide for the discipline of careless, negligent, or incompetent attorneys. Its interpretation, however, has never been an issue before this court since the rule's enactment in 1975. As a result, the applicability of the rule to specific fact situations is far from clear.

The burden of this rule unfortunately appears to fall disproportionately on younger members of the legal profession who begin their

---

[13]Each of the other rule violations with which petitioner is charged (rule 5-101; rule 8-101(B)(3)) appears to have been a technical violation of the disciplinary rules which resulted in no permanent loss to client Vacha or his wife's estate. When petitioner actually obtained the $4,000 loan from estate funds in November of 1974, rule 5-101 had not yet become effective. Its predecessor, however, former rule 4, was considerably stricter in that it totally prohibited an attorney from acquiring an interest adverse to his client. (See fn. 2, *ante*, page 685.) While not technically correct, then, the State Bar has quite rightly only charged petitioner with a violation of the more flexible rule 5-101. With respect to the asserted violation of rule 8-101(B)(3), the rule was in effect in April of 1975 when petitioner wrote the check to Vacha which the bank refused to honor.

[14]Additional factors in mitigation which appear from the record include the fact that petitioner has admitted his responsibility and appears remorseful, and that this is his first disciplinary proceeding.

[1]See footnote 1 of the court's opinion, *ante*, page 685.

careers as solo practitioners. It is they who are most likely to lack "the learning and skill ordinarily possessed by lawyers...who perform... similar services...," yet be unable to easily "associate" or "professionally consult" another lawyer possessing the requisite learning and skill. It has been suggested that rule 6-101 may implicitly mandate an apprenticeship system for beginning lawyers. (See Schwartz, Lawyers and the Legal Profession (1979) p. 389.)

Despite recent trends in legal education, graduates of law schools in this state or in other parts of the country are seldom prepared to begin the practice of law on their own. Law schools have traditionally emphasized training in legal reasoning as opposed to legal practice: "how to think" rather than "how to do." While this may be a necessary predicate to the practice of law, it places increasingly severe burdens on law school graduates who are unable to secure employment with large law firms or government agencies where they have access to advice from experienced colleagues.

Another major problem with rule 6-101 lies in determining what mental state is necessary for a violation. Specifically, I am unclear as to whether and under what circumstances "mere negligence" is punishable under the rule.

When paraphrased subdivision (1) states that an attorney "shall not *wilfully* or *habitually*" perform legal services "if he *knows* or *reasonably should know*" he is not competent to do so. (Italics added.) Taken literally, the rule suggests that the performance of incompetent legal services is not subject to discipline if the attorney did not intend the performance in the first place, or at least if the accidental performance of incompetent services is not "habitual." Since it is hard to imagine a situation where an attorney would accidentally perform a legal service, the use of the phrase "wilfully or habitually" appears to be redundant. Alternatively, the State Bar[2] may have intended that only "habitual" negligence be punishable under the rule. Unfortunately, I can see no accepted way of reading the English language to derive that meaning.

In the instant case, it seems clear that petitioner was aware that he lacked the requisite skill and training to handle the probate of the estate

---

[2] I recognize that since this court has the ultimate authority to approve or reject the State Bar Disciplinary Rules (Bus. & Prof. Code, § 6076), it must accept at least part of the blame for adopting the confusing language of this rule.

since he initially consulted an experienced probate attorney. It is therefore unnecessary for this court to address the issue as to whether or not rule 6-101 would apply if it had only been shown that petitioner "should have known" he was not competent to handle the case. It is my hope that before a case raising that issue comes before this court, the State Bar will consider an appropriate clarification of the rule.