[Crim. No. 2747. In Bank.—November 6, 1925.]

In the Matter of the Application of WALTER H. STEVENS for Readmission as an Attorney at Law.

[1] ATTORNEY AT LAW—DISBARMENT—APPLICATION FOR READMISSION—TRANSFER TO SUPREME COURT—JURISDICTION.—An application for readmission or reinstatement as an attorney at law is a "cause," within the contemplation of section 4 of article VI of the constitution, which the supreme court has jurisdiction to transfer from the district court of appeal, before or after decision therein, for hearing and determination in the supreme court.

[2] ID.—RESTORATION TO PRACTICE—ORIGINAL JURISDICTION OF APPLICATION.—The supreme court and the district courts of appeal have, but the superior court has not, original jurisdiction to determine applications for restoration to practice of attorneys and counselors at law after disbarment.

[3] ID.—RE-EXAMINATION OF APPLICANT—DISCRETION OF COURT.—Sections 276, 276a, and 277 of the Code of Civil Procedure are con-

1. See 3 Cal. Jur. 750; 7 Cal. Jur. 671.
2. See 3 Cal. Jur. 753.

cerned only with the procedure to be followed in the case of an applicant seeking admission for the first time, and not to an applicant seeking restoration of the privilege to practice after disbarment; and the question of re-examination by the Board of Bar Examiners of an applicant for restoration to practice is left to the sound discretion of the court to which the application is presented.

(1) 15 C. J., p. 1030, n. 35.   (2) 6 C. J., p. 615, n. 85.   (3) 6 C. J., p. 615, n. 90.

APPLICATION for readmission as an attorney at law. Transferred to District Court of Appeal for further proceedings.

The facts are stated in the opinion of the court.

James D. Randles for Applicant.

Norman Sterry, Oscar Lawler and Guy R. Crump for Respondent, Los Angeles Bar Association.

LAWLOR, J.—Application for readmission to practice law in all the courts of the state.

The petitioner, Walter H. Stevens, was admitted to the bar of this state by the district court of appeal for the second appellate district, on January 10, 1911. It was not until March 1, 1912, however, that he first engaged in active practice. A grand jury on November 18, 1913, returned to the district court of the United States, southern division of the southern district of California, an indictment against him charging a conspiracy to use the United States mails in a scheme to defraud—a felony involving moral turpitude. After a trial and conviction thereof he was, on September 7, 1915, sentenced to imprisonment for six months and to pay a fine of two thousand five hundred dollars. On June 14, 1917, the said district court of appeal entered an order of disbarment based upon the said conviction. Petitioner was discharged on December 8, 1917, having served the term of imprisonment. Since his discharge he has been in the employ of the Los Angeles Railway Corporation and it was shown that during his employment he was promoted several times. On October 31, 1921,

he was granted a pardon by the President of the United States "for the purpose of restoring his civil rights."

Petitioner, in March, 1922, filed a petition in the said district court of appeal for *readmission* as an attorney at law, which petition was denied. (*In re Stevens*, 59 Cal. App. 251 [210 Pac. 442].) In the year 1923 a similar petition was filed in the same court and likewise denied. (Id., 63 Cal. App. 682 [219 Pac. 1014].) The present petition, with its supporting affidavits, was filed in the same court on April 10, 1924. An answer thereto was made by the respondent Los Angeles Bar Association which, as stated by the petitioner, presented "an issue of law only" —no counter-affidavits were filed in opposition to the affidavits of petitioner "as to his recovered moral character and high standing as a man and worthy citizen." This petition was also denied in the said district court of appeal.

It is stated by petitioner that "The legal issue in this matter was raised in the answer of the Los Angeles Bar Association, in paragraph two thereof, as follows: 'That said applicant has not submitted to any examination conducted by the State Board of Bar Examiners, has not satisfactorily, or otherwise, passed any such examination, nor has he satisfied said board as to his moral character, nor has any certificate been issued to nor has said applicant complied in any respect with the provisions of sections 276a or 277 of the Code of Civil Procedure.' "

Petitioner contends that "The Constitution of California adopted in 1879 places no restrictions upon the judiciary of this state respecting the right to control the admission and licensing of persons to practice law in this state. In fact, as it was adopted, so it stands today, silent upon the question of how, when or whom the court shall admit. Neither is there any restriction upon the court as to how, when or whom it may readmit as an attorney and officer of its court, after disbarment for whatever cause. . . .

"A disbarred attorney, for whatever cause, still retains a right to apply to the court for readmission to practice, and when he can produce satisfactory evidence to the court of his reformation, and general rehabilitated good name, character and integrity, the court will hear him. . . .

"In the case at bar, there was in our judgment a clear case made on the affidavits submitted with the petition and in support thereof, to have warranted the learned District Court of Appeal . . . in granting the prayer of the applicant, and we are of the firm conviction that said court must have been convinced of the satisfactory proofs offered, to justify an order of readmission as prayed for, and under all of our state decisions the only question before the court necessary to warrant it in granting the petition, was the sufficiency of the evidence offered. Not finding any fault with our evidence, and lacking any evidence in opposition, the learned District Court of Appeal erred in denying the relief asked for."

We quote from respondent's brief: "First: An attorney who has been permanently disbarred is relegated to the status of one who has never been admitted to practice law; and, to be readmitted to practice, must comply with the requirements of Part I, Title V. Chapter 1 of the Code of Civil Procedure;

"Second: If the power exists to readmit a disbarred person to practice without formal compliance with said code provisions, the court may, and should, in its discretion, require reference to the Board of Bar Examiners for examination as to mental and moral qualifications;

"Third: Neither applicant [referring also to *In re Cate*, *post*, p. 796 [241 Pac. 95], has shown any such regeneration of character as to justify his admission to practice."

The provisions of the Code of Civil Procedure covering original admissions to the bar read as follows:

"276. Qualifications for admission as attorney and counselor. Every applicant for admission as an attorney and counselor must present to the district court of appeal of the appellate district in which he resides satisfactory testimonials of good moral character, together with satisfactory proof that for at least three years he has diligently and in good faith studied law in such manner, upon such subjects and under such conditions as the supreme court or the board of bar examiners shall have prescribed. Before being admitted he must produce a certificate showing that he has satisfactorily passed an examination conducted by the board of bar examiners.

"Applicants must apply for admission to the district court of appeal of the appellate district in which they reside; provided, that a person may make application and be examined and admitted in another appellate district upon filing with his application a written statement showing good cause therefor, satisfactory to the court to which he applies, accompanied by the written consent of the presiding justice of the appellate district in which he resides.

"276a. Board of bar examiners. Appointment. Examinations. Certificates. The supreme court is empowered to appoint three competent attorneys to examine applicants for admission as attorneys and counselors at law. Such persons shall constitute the board of bar examiners. The said board shall hold examinations for admission to the bar of applicants who have regularly filed their applications and paid all necessary fees, upon such subjects, and at such times and places as the supreme court or said board may, by its rules or orders direct; provided, that said examination shall be wholly or in part written examinations. The examinations may be conducted by two members of the board. Said board shall issue a certificate to each of said applicants who shall satisfactorily pass such examination and who shall satisfy said board as to his moral character. Nothing herein shall be construed as preventing the district courts of appeal from further examining any applicant where deemed proper. . . .

"277. Certificate of admission. May practice in all courts. Upon presentation to it of the evidence required by section two hundred seventy-six, any district court of appeal shall admit the applicant as an attorney and counselor at law in all the courts of this state, and shall direct an order to be entered to that effect upon its records, and that a certificate of such admission be given to him by the clerk of the court, which certificate shall be his license. Every person admitted to practice by a district court of appeal, either upon examination or otherwise, may practice as an attorney in all of the courts of this state, including the supreme court; and every person now entitled to practice in the supreme court of this state may practice as an attorney in any district court of appeal.

"278. Oath. Every person on his admission must take an oath to support the constitution of the United States and the constitution of the state of California, and to faithfully discharge the duties of an attorney and counselor at law to the best of his knowledge and ability. A certificate of such oath must be indorsed upon the license."

[1] Preliminarily we will consider the question suggested by the court at the oral argument as to whether or not the supreme court may entertain an application for hearing in said court in a proceeding of this nature where it arises in and is decided by a district court of appeal.

Section 4, article VI of the constitution provides in part: "The Supreme Court shall have power to order any cause pending before the Supreme Court to be heard and determined by a District Court of Appeal and to order *any cause* pending before a District Court of Appeal to be heard and determined by the Supreme Court. . . . "

*In re Wells,* 174 Cal. 467 [163 Pac. 657], was a proceeding brought by a committee of the Orange County bar association in the district court of appeal for the third appellate district to set aside and vacate on the ground of fraud a previous order of said court admitting the accused to practice law in all the courts of this state on the presentation of a license to practice law in the state of Nevada. A demurrer and a motion to strike out the allegations of the petition were interposed, both sustained and the petition dismissed. Within sixty days thereafter the said committee petitioned the supreme court for a transfer of the cause and the application was granted. After hearing, this court denied the motion to strike out the petition and ordered the demurrer overruled. The first question presented was whether or not this court had power to transfer and entertain such a proceeding. In construing the word "cause" found in section 4 of article VI of the constitution the court declared at page 472: "The Supreme Court was given power in any matter decided by the district court of appeal to vacate the decision and order it transferred to its own calendar for rehearing and decision. To describe the decisions subject to this power the word 'cause' was selected. This was the word used in the clause of section 2 giving similar power over the department decisions, which, in that clause, as we have said,

has been understood to apply to every matter that could be decided by a department. The familiar rule of construction requires that it be given a similarly broad meaning in the new provision, and to include *every matter decided by a district court of appeal, and operating as a final decision or disposition thereof in that court.* It is clear, therefore, that the power to transfer causes from the district court of appeal to the supreme court, either before or after judgment in the district court of appeal, was intended to have this all embracing application." (Italics ours.)

It follows that this proceeding being a "cause" within the contemplation of the constitution this court has jurisdiction to transfer it from the district court of appeal, before or after decision therein, for hearing and determination herein.

The history of the legislation bearing on the admission of applicants to practice law and the removal or suspension of attorneys and counselors at law may aid in the determination of the question of restoration herein involved. Neither the former nor the present constitution has ever assumed to deal with any of these subjects.

Section 2 of an act of 1851 (Stats. 1851, p. 48), provided for an examination by a supreme court justice of applicants seeking admission to practice law in all the courts of the state. Section 4 thereof authorized the district and county courts to admit applicants to practice in their respective courts.

In 1872, when the codes were adopted, section 276 of the Code of Civil Procedure was made to cover the subject of admission to practice. It provided that an applicant "undergo a strict examination, in open court, as to his qualifications, by the Justices of the Supreme Court." Thus it will be seen that by the adoption of the codes the district and county courts were relieved of the power conferred by the above act of 1851. However, section 276 of the Code of Civil Procedure was amended in 1874 (Code Amendments 1873–74, p. 404) so as again to confer on the several district and county courts the authority to admit applicants to practice in their respective courts. In 1880 the section was amended (Code Amendments 1880, p. 55), taking such power from those courts and vesting in the

superior court authority to admit applicants to practice exclusively in that court. Again in 1895 (Stats. 1895, p. 56) the section was amended so as to divest the superior court of authority to admit applicants to practice in that court and substituting in place thereof a proviso that not less than three of the supreme court commissioners, to be designated and appointed by the chief justice, may also examine applicants seeking admission to practice, reporting the results of the examinations to the supreme court for final action. By an amendment of 1905 (Stats. 1905, p. 5) the authority to admit applicants to practice in all the courts of the state was and now is vested exclusively in the district courts of appeal created by the constitution in the preceding year. In 1917 (Stats. 1917, p. 906) an amendment to section 276 of the Code of Civil Procedure provided that an applicant seeking admission to practice "must produce satisfactory proof of having studied law for a period of at least two years, and undergo in open court a strict examination, a part of which must be in writing. . . . " This section was again amended in 1919 and section 276a of the Code of Civil Procedure added (Stats. 1919, p. 721) creating the board of bar examiners and providing for their conduct of examinations for admission to the bar, the order of admission by the district courts of appeal being based on a certificate of the board certifying to the applicant's mental and moral qualifications.

It is to be noted that prior to the 1905 amendment of section 276 of the Code of Civil Procedure, the supreme court exercised exclusive jurisdiction in the admission of applicants to practice as attorneys and counselors at law in *all* the courts of the state.

The power to remove or suspend from practice attorneys and counselors at law was vested by section 13 of said act of 1851 (Stats. 1851, p. 48) exclusively in the supreme court. Section 13 was amended in 1859 (Stats. 1859, p. 60) so as to also vest in the district courts the authority of removal or suspension.

By the adoption in 1872 of the codes, section 287 of the Code of Civil Procedure contained a provision similar to said section 13, leaving the authority to remove or suspend attorneys and counselors at law in the supreme court

and the district courts. The amendment of section 287 in 1880 (Code Amendments 1880, p. 57) transferred to the superior court the authority theretofore vested in the district courts. By the later amendment of 1911 (Stats. 1911, p. 848) the power of removal or suspension was also given to the district courts of appeal and ever since such authority has resided in the supreme court, the district courts of appeal and the superior court.

[2] As already indicated, respondent contends that an applicant seeking readmission to practice is in the same position as an original applicant seeking admission, and hence to be readmitted the provisions of sections 276, 276a, and 277 of the Code of Civil Procedure must be followed. Since under these provisions the power to admit original applicants to practice is vested exclusively in the district courts of appeal, this contention is tantamount to a claim that all applications for restoration to practice must likewise be made to those courts. Upon this hypothesis we will now proceed to consider whether such authority is vested exclusively in the district courts of appeal. So far as our research has extended the legislature has never conferred such authority on any court. This being so, it is well to consider what the practice has been in this regard.

Prior to the creation of the district courts of appeal in 1904 the supreme court exercised jurisdiction over applications for restoration to practice. We cite, for instance, the following authorities: *People* v. *Turner,* 1 Cal. 143; Id., 1 Cal. 190, *Fletcher* v. *Daingerfield,* 20 Cal. 427, *Cohen* v. *Wright,* 22 Cal. 293, *Case of Lowenthal,* 61 Cal. 122, *Ex parte Tyler,* 107 Cal. 78 [40 Pac. 33], and *In re Treadwell,* 114 Cal. 24 [45 Pac. 993].

Since the creation of the district courts of appeal and up to the amendment of section 276 of the Code of Civil Procedure, in 1919 (creating the board of bar examiners), the supreme court and the district courts of appeal have both assumed original jurisdiction over applications for restoration to practice. As illustrative of this practice see *Matter of Paul A. Vincilione,* the decision appearing only in the minutes of the supreme court under date of December 15, 1913; *Matter of Shepard,* 35

Cal. App. 492 [170 Pac. 442], and *In re Thompson*, 37
Cal. App. 344 [174 Pac. 86].

Upon this question we think it was never contemplated
that the supreme court, a court of final jurisdiction in
the state—which has from the beginning exercised original
jurisdiction in such matters, and with which the legisla-
ture has never interfered, either prior to or since the
creation of the district courts of appeal—is without juris-
diction to entertain such applications or without authority
to exercise a salutary control over the bar of the state.

And while the legislature did not, when amending sec-
tion 276 of the Code of Civil Procedure, in 1905, con-
ferring exclusive jurisdiction on the district courts of ap-
peal to admit original applicants to practice, nor when
amending the said section in 1917 and 1919, include au-
thority to entertain applications for restoration to practice
after disbarment, still those courts having for years been
vested with exclusive jurisdiction to admit original ap-
plicants to practice, having authority to remove or suspend
attorneys and counselors at law, and having entertained
applications for restoration, their jurisdiction in restora-
tion proceedings can hardly be said to be open to ques-
tion. It follows that the supreme court and the district
courts of appeal have, for the reasons advanced, original
jurisdiction over applications for restoration to practice
after disbarment.

Though the application herein was not made to the
superior court, nevertheless the question whether it has
jurisdiction to restore to practice after disbarment is neces-
sarily involved by respondent's position indicated above—
that such authority is vested alone in the district courts
of appeal. So far as we are aware, it may be said that
this question has been involved in three cases. In *In re
Wharton*, 130 Cal. 486 [62 Pac. 741], a judgment of dis-
barment had been entered by the superior court and an
application was made in the supreme court to set it aside.
This court declared: "As the original proceedings for the
disbarment were had and determined before the Superior
Court, any application for a modification or change in its
judgment should be made in that court." The applica-
tion in that case, it would appear, was in its essence a
demand for restoration to practice after disbarment, for

if such application "to set aside the judgment" had been granted the disability would have automatically disappeared. Apparently the authority of the superior court to restore to practice was not brought into question. Evidently the court regarded the proceeding as an application to modify or change the judgment rather than one for restoration and what is said in the decision that such relief could only be afforded by the court which rendered the judgment must be interpreted in that light and not as a decision that the superior court had or had not jurisdiction to restore to practice after disbarment.

In *Danford* v. *Superior Court,* 49 Cal. App. 303 [193 Pac. 272], it was declared that *In re Wharton, supra,* erred in holding that the application in that case was for a modification or change of the judgment of disbarment rather than an application for "admission." What was said by the court in that connection will, to avoid repetition of quotation, appear under the next and final point.

While we agree with the conclusion announced in *Danford* v. *Superior Court, supra,* that the superior court cannot restore a disbarred attorney to practice, yet we cannot accept the conclusion that the determinative factor is the lack of authority in that court to admit original applicants to practice, for we have shown that notwithstanding the supreme court also lacks such authority it may, nevertheless, entertain applications for restoration to practice.

*In re Hahn,* 56 Cal. App. 702 [206 Pac. 473], involved an application by the district attorney of Los Angeles County in the superior court to set aside the "reinstatement" by that court of the accused attorney. The disbarment had also been entered by the superior court. The district court of appeal declared: "The action of the district attorney was taken under the view that the Superior Court was without jurisdiction to make the order of reinstatement. The decisions *In re Mash,* 39 Cal. App. 548 [179 Pac. 897], . . . and *Danford* v. *Superior Court,* 49 Cal. App. 303 [193 Pac. 272], . . . affirmed this view and the Superior Court held that the judgment of disbarment was still effective." What we have said concern-

ing *Danford* v. *Superior Court, supra,* is equally applicable here.

In the absence of direct provision on the subject and in view of the facts that the authority of the superior court to admit to practice was confined to its own forum, that it was divested of such authority thirty years ago, that the later legislative policy was to vest that jurisdiction exclusively in the district courts of appeal, and that the practice for years has uniformly been to present applications for restoration to practice to the supreme court or the district courts of appeal, the conclusion is inescapable that the superior court is without jurisdiction to entertain applications for restoration to practice.

We therefore hold that the supreme court and the district courts of appeal have, but that the superior court has not, original jurisdiction to determine applications for restoration to practice of attorneys and counselors at law after disbarment.

[3] We will now pass to the final and principal question whether applicants for restoration to practice must, as in the case of original applicants, submit to an examination as to their mental qualifications. In other words, may a disbarred attorney be restored to the right to practice upon the production of satisfactory testimonials of good moral character without the necessity of submitting to a re-examination? We do not find that this question has ever before been presented in this state.

Respondent, while contending that a disbarred attorney seeking restoration to practice is in the same position as an applicant seeking admission for the first time, states that "By section 276a, added in 1919, provision is made for the appointment of the Bar Examiners, and for the holding of 'examinations for admission to the bar of applicants who have regularly filed their applications.' . . . "

But sections 276, 276a, and 277 of the Code of Civil Procedure are concerned only with the procedure to be followed in the case of an applicant seeking admission for the first time; none of these sections assumes to cover the case of a disbarred attorney seeking restoration of the privilege to practice. Nowhere is it in terms required that such an applicant must produce "a certificate show-

ing that he has satisfactorily passed an examination conducted by the Board of Bar Examiners . . ."

Since the addition of section 276a of the Code of Civil Procedure, providing for the board of bar examiners, and up to the present time, the practice has been followed by the supreme court and the district courts of appeal, in the exercise of original jurisdiction, of entertaining applications for restoration to practice after disbarment without requiring the applicants to submit to an examination as to their mental qualifications. (*In re Application of John S. Delancey*, and *In the Matter of Hatch*, reported only in the minutes of the supreme court under date of August 9, 1920, and September 20, 1920, respectively; *Danford* v. *Superior Court*, 49 Cal. App. 303 [193 Pac. 272]; *Bar Association* v. *Cantrell*, 53 Cal. App. 758 [200 Pac. 968]; *In re Hahn*, 56 Cal. App. 702 [206 Pac. 473]; *In re Stevens*, 63 Cal. App. 682 [219 Pac. 1014]; *In re O'Connell*, 64 Cal. App. 673 [222 Pac. 625].)

The authorities relied upon by respondent to sustain the claim that a re-examination is a prerequisite to the granting of an application for restoration to practice are *In re Mash*, 39 Cal. App. 548 [179 Pac. 897], and *Danford* v. *Superior Court*, 49 Cal. App. 303 [193 Pac. 272]. In the former the petitioner had been admitted to practice in this state by the district court of appeal upon his production of a license to practice issued by the supreme court of Iowa. His California license was subsequently revoked on the ground that he had concealed, at the time of his admission here, certain facts concerning his past life which, if they had been revealed, would have resulted in a denial of his application to be admitted to practice in the courts of this state. Subsequently upon an application for restoration to practice the district court of appeal found the evidence tending to show his reformation sufficient to warrant his name again being placed on the roll of attorneys. In denying an application for transfer, the supreme court declared in part: "The application to the district court is not to be regarded as a motion to vacate the order previously made by that court revoking its original order admitting Mash to practice law. That order stands unaffected. His present application to that court is to be considered as an application for admission to the bar, either

on examination in open court and 'testimonials of good moral character,' under section 276 of the Code of Civil Procedure, or for admission on production of a license from a sister state 'and satisfactory evidence of good moral character,' under section 279 of the Code of Civil Procedure. . . . The power to admit persons to practice law is now vested exclusively in the district court of appeal, and consequently it is to that court that the 'satisfactory evidence,' or the 'testimonials,' as the case may be, are to be produced, and it is for that court to determine whether they are sufficient to establish the moral character required. Such a decision is a finding upon a question of fact.

"Our functions in such a case are supervisory only. We have no original authority to admit persons to practice law. Hence, we should not interfere with the decision of the district court of appeal upon such question of fact, unless the record and proceedings in that court show that an error of law led it to the decision, or that the evidence was either wholly insufficient to establish the good moral character of the applicant or so slight as to be grossly inadequate."

In *Danford* v. *Superior Court*, 49 Cal. App. 303 [193 Pac. 272], the petitioner had been disbarred by an order of the superior court for the county of Los Angeles. Subsequently the superior court, upon its own motion, and without notice to the Los Angeles Bar Association, ordered the accused "reinstated" to the practice of the law in the superior court. At a later date another judge, sitting in said superior court, set aside the order of reinstatement upon motion of the Bar Association of Los Angeles County. Notwithstanding this latter order, the petitioner held himself out as a practicing attorney and appeared as such in the superior court for the city and county of San Francisco. Contempt proceedings were thereupon commenced against petitioner in that case and he sought a writ of prohibition to restrain said superior court from entertaining said contempt proceedings. In denying the writ the district court of appeal said at page 305: "Assuming the power to disbar, the order of disbarment became final upon its affirmance by the Supreme Court. Thereafter no court had power to modify or set aside the order either upon

motion or otherwise. An application for reinstatement of an attorney disbarred by a judgment of a court of competent jurisdiction, made after the order of disbarment has become final, must be treated as an application for admission to practice and not as an application to vacate the order of disbarment. As such it must be addressed to the court having jurisdiction to admit an attorney to practice. (*In re Mash,* 39 Cal. App. 548 [179 Pac. 898] . . . )

"Since the amendment to section 276 of the Code of Civil Procedure, in 1895, the Superior Court is without jurisdiction to admit an attorney to practice in any court of the State. That power, at the time the order purporting to reinstate the petitioner was made, was, and now is, conferred exclusively upon the district courts of appeal. Hence the superior court in Los Angeles, being without jurisdiction to admit petitioner to practice, could not entertain an application for restoration after disbarment.

"In the case of *In re Wharton,* 130 Cal. 486 [62 Pac. 741] . . . there is language intimating that where the disbarment took place in the superior court the motion for reinstatement should be made in that court, but the error of the ruling in that case is that the court treated the motion for reinstatement as a motion to modify the judgment of disbarment rather than a motion for admission to the bar. In view of the decision of the Supreme Court in *In re Mash, supra,* the Wharton case is not controlling. Treating the motion for reinstatement as a motion for admission to the bar, as it must be treated, it necessarily follows that such motion must be addressed to a court which has jurisdiction to admit to the bar. As the Superior Court had no power to admit petitioner to practice in any court, there can be no doubt that the order in question is void on its face for want of jurisdiction in the court."

A petition for hearing in the matter of *Danford* v. *Superior Court, supra,* was denied by this court.

It is clear that *In re Mash, supra,* is not authority on this question. The applicant in that case, it is true, sought "an order restoring him to the roll of attorneys and counselors at law entitled to practice in the courts of this state," but the opinion of the supreme court in denying the petition for transfer did not declare that an attorney who had

been duly admitted to practice and was thereafter dis-
barred must, upon an application to be restored to the roll
of attorneys, apply to the courts having exclusive jurisdic-
tion over original admissions to the bar and submit to a
re-examination as to his mental qualifications; on the con-
trary, it was put upon the ground that as the applicant's
license to practice law in this state had been obtained by
fraud he stood before the court as if he had never been
admitted to practice, and it was upon that reasoning the
conclusion was reached that the statutory procedure gov-
erning original applicants (secs. 276, 277, Code Civ. Proc.)
must be pursued or he should proceed ''for admission upon
production of a license from a sister state 'and satisfac-
tory evidence of good moral character,' under section 279
of the Code of Civil Procedure.''

Although *Danford* v. *Superior Court, supra,* does de-
clare that ''An application for reinstatement of an attorney
disbarred by a judgment of a court of competent jurisdic-
tion . . . must be treated as an application for admission
to practice and not as an application to vacate the order
of disbarment'' and that ''As such it must be addressed
to the court having jurisdiction to admit an attorney to
practice (*In re Mash,* 39 Cal. App. 548 [179 Pac. 898]),''
nevertheless it is lacking in authoritative force, for the
reason that it is founded on *In re Mash, supra,* which, as
we have shown, is not authority on the point. We have
examined the petition for a transfer of the Danford case
to this court and find it was urged that the decision of
the district court of appeal was in error in holding that
applications for restoration can only be entertained by the
courts having jurisdiction to admit to practice. From this
it may be contended that the principle was accepted by
this court. But, as the remedy sought involved a ques-
tion of jurisdiction only, it is conceivable that in the de-
nial of the transfer the question was either not passed
upon or deemed not controlling. It is also pertinent to
consider that under the rule governing applications for
transfer from the district courts of appeal in cases prop-
erly appealable to those courts, the denial of the petition
for transfer ''is not to be taken as an expression of any
opinion by this Court, or as the equivalent thereof, in
regard to any matter of law involved in the case and not

stated in the opinion, nor, indeed, as an affirmative approval by this Court of the propositions of law laid down in such opinion." (*People* v. *Davis,* 147 Cal. 346, 350 [81 Pac. 718, 720].) Moreover, this court exercised jurisdiction in restoration proceedings in the Delancey and Hatch cases, respectively, a short time before and a few days after the decision in the Danford case was handed down by the district court of appeal. We think it as reasonable to hold that in denying the petition for transfer in the Danford case this court did not approve the holding on this point as it is to hold that it did, for, as above indicated, the general subject was before the court about the time the Delancey case and the Hatch case were considered.

The Danford case holds, as already indicated, that an application for restoration must be treated as an application for original admission and as such must be addressed to the court having jurisdiction to admit to practice in the first instance. Our conclusion is that the Danford case is in error in two particulars—first, in holding that such an applicant is in the same position as one seeking original admission; and, second, in declaring that this principle was laid down in the Mash case. It follows that the implication of the Danford case that the applicant for restoration to practice must submit to a re-examination is also erroneous. In any event, it is proper to say that we are not prepared in the absence of legislative expression to accept the conclusion that every applicant for restoration to practice must submit to a re-examination as to his mental qualifications. No adequate reason occurs to us for making the rule invariable. The law is interested in the regeneration of erring attorneys, and in the enforcement of a sound discipline its disposition ought not to be to place unnecessary burdens upon them.

In some cases where it would be in the interest of justice to restore to his life work a disbarred attorney and concerning whose grasp of the law there is no question, such a requirement would be unnecessary. On the other hand, cases may arise where it is apparent the applicant has not shown as an attorney that he possesses the requisite mental qualifications and in such cases the rule contended for would be properly applied. In our opinion, the alternative

rule proposed by the respondent, that the question of a re-examination of the applicant by the Board of Bar Examiners should be left to the sound discretion of the courts, we hold to be proper one and in a case calling for such re-examination and restoration the same procedure may be followed as in the case of an original applicant seeking admission.

It has been shown that the applicant has sought "readmission" to practice. We have considered the case upon the hypothesis that an order of "suspension" operates automatically—that is to say, when the period of suspension has expired the attorney is *ipso facto* entitled to practice; that "reinstatement" and "restoration" apply to the case of a disbarred attorney who has by an order of court been returned to practice. And while there may be an etymological distinction between the latter terms and "readmission"—the latter possibly importing re-examination—we have given to "readmission" the same import as "reinstatement" and "restoration."

It is ordered that the matter be transferred to the district court of appeal, second appellate district, division two, for further proceedings in accordance with the views herein expressed.

Shenk, J., Seawell, J., Waste, J., and Myers, C. J., concurred.

RICHARDS, J., Dissenting.—I am in agreement in the main with the discussion and conclusions arrived at in the foregoing opinion, but I disagree with and dissent from that portion thereof wherein the suggestion is made that the district court of appeal, in the hearing of disbarment or reinstatement cases, may put in issue the mental qualifications or equipment of the practitioner seeking evasion or removal of the bar sinister, and may in its discretion refer the latter to the bar examiners for re-examination. No precedent has been cited and I am satisfied none exists for such a procedure. The question as to the mental qualifications in point of learning of one seeking admission to the bar is determined in the first instance by the procedure provided by statute for the ascertainment of these qualifications, and once ascertained and the license issued

the ability and the right of the holder of such license by virtue of the ascertained possession of these qualifications is not thereafter the subject of review. If in the course of his subsequent practice the attorney commits any unethical act which brings him under the penalty of disbarment the procedure for the ascertainment of such wrongdoing and the order inflicting such penalty are predicated wholly upon the proofs of his subsequent misstep. The question as to the mental qualifications or equipment of the accused practitioner is in nowise involved in that inquiry and could not in fact be considered by the tribunal investigating the case. Upon the application of the disbarred attorney for reinstatement the question of his mental qualifications and equipment are equally beyond the scope of inquiry, the sole question being whether by his good conduct since his disbarment he has shown cause for restoration to his former position at the bar; whether the doctrine of *locus penitentiae* shall be applied to his case. To extend the inquiry so as to invest the tribunal making it with the power to require the applicant for reinstatement to submit to a reexamination as to his mental qualifications or equipment would be to deny, especially to elderly practitioners, the mercy to which their repentance and good conduct would otherwise entitle them, and to invest the tribunal authorized to extend such mercy with powers never heretofore exercised and liable to great abuse.

Lennon, J., concurred.