[S. F. No. 15094. In Bank.—July 28, 1934.]

MERCER H. FARRAR, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Mercer H. Farrar, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—This is a proceeding to review the action of the board of governors of The State Bar of California recommending suspension of the petitioner Mercer H. Farrar from the practice of law in this state for a period of two years for professional misconduct and violation of his oath as an attorney.

Petitioner does not question the evidence before the board of governors, their findings thereon, nor the propriety of their recommendation. His only point, which is in the nature of a plea for clemency, is that, in view of all the facts and circumstances, the recommendation of the board of governors is unduly harsh and severe, and he asks that the period of suspension be reduced.

A partial hearing was had before local committee No. 3 of San Francisco County on June 8, 1933, and the petitioner not appearing, the matter was continued to June 29, 1933, when the respondent appeared and the matter was fully heard and submitted. The findings of the local committee were as follows:

"As to the first count, it appears that in June, 1931, John Baldanzi, the complaining witness, employed respondent, who was an attorney practicing his profession in San Francisco, with offices at 519 California Street, to establish a record of the birth of Attilio Frederico Vomero. Vomero, who was a nephew of the complaining witness, resided at the time in Pennsylvania and complaining witness acted as his agent. The employment was accepted by respondent who agreed to complete the proceedings for a fee of $50.00.

Respondent was paid at the time of his employment $20.00 and a short time later an additional $10.00. Respondent was also given at the time of his employment the baptismal record of Vomero. Respondent intimated to the complaining witness that he had filed the necessary petition and that a hearing would be had December 14, 1932 (1931). Later he told complaining witness he had been obliged to continue the matter over the Christmas holidays. Complaining witness, hearing nothing further, consulted Attorney Reisner in February, 1932. Mr. Reisner upon examining the records found no petition had been filed and he so stated to the complaining witness. Mr. Reisner filed the necessary petition March 16, 1932, and completed the proceedings in three weeks.

"Respondent has not returned the payments he received nor did he perform any of the services for which he was employed by complaining witness.

"As to the second count, it appears that Rachel Cosentino, the complaining witness, employed respondent to probate her husband's estate. Vicenzo Cosentino, the husband, died January, 1917, leaving an estate consisting of $2,791.54 in a savings account in the Bank of Italy and an undivided interest in three flats at 16 Bernard Street, San Francisco. Joseph Sarubi, complaining witness' brother, introduced respondent to Rachel Cosentino at the time of her husband's death and she employed respondent to probate the estate. The employment was accepted by respondent who was paid $25.00 on January 20, 1928, and gave his written receipt therefor. On the same day complaining witness designated her brother, Joseph Sarubi, in a written nomination, to act as administrator. Respondent filed the petition for letters of administration on January 21, 1928. The hearing was had February 7, 1928, and Sarubi was appointed administrator. On the day that Sarubi was appointed administrator complaining witness and respondent went to the Bank of Italy and transferred decedent's account to Joseph Sarubi individually and not as administrator. Upon completing the transfer Sarubi withdrew $250.00 and paid this to respondent who gave his written receipt reading: 'Received of Mrs. Cosentino by hand of Joseph Sarubi $250.00 in full of fee and costs *re* estate of V. Cosentino.'

"On August 25, 1930, respondent was paid an additional $20.00 by Sarubi and gave his receipt in writing as follows:

'Received of Joseph Sarubi $20.00 *re* settlement in estate of V. Cosentino, dec'd.'

"Notice to creditors in the Cosentino Estate was published and the affidavit of publication filed. No inventory and appraisement or other proceedings were had in the estate. Sarubi, the administrator, died April 8, 1932. Respondent prepared a petition for letters of administration in favor of Rose A. Pucheu, as successor to Sarubi, but this petition was never filed.

"Respondent has taken no further proceedings in the estate of Cosentino nor has he refunded any part of the payments he received."

The local committee drew the following conclusions from the record: "Respondent seeks to justify his acts by what he terms a plea 'in confession and avoidance'. He admits the fact of his neglect but seeks his excuse in a series of personal misfortunes, financial reverses and illness in his family. Referring to the Baldanzi matter respondent testified, 'He gave me the money and the pressure on me was such that every dollar I got into my hands I had to use in my wife's condition.' These things forced respondent to close his office and later leave town in an attempt to restore his wife's health.

"The excuse is made in the Cosentino matter that Sarubi, as administrator restrained respondent's hand. 'He didn't want me (respondent) to do anything and go ahead any more.' However, it is apparent that the true reason for the neglect in this estate, extending over a period of five years, was, as respondent states, 'the condition of my own personal home'.

"The personal misfortunes of respondent though touching our feelings and sympathy cannot stand 'in avoidance' of his duties to his client. The widow of Cosentino is still awaiting her estate, and probably will face the necessity of additional costs. Respondent took his fees and costs in full in this estate, without order of Court and in advance of the statutory period. Respondent's professed willingness to act in these matters was forestalled by his yielding to the necessities of the moment. There is, however, throughout the record a keen sense of respondent's appreciation of the wrong to his clients and a depreciation of the facts to which he found himself a victim. While we cannot

condone respondent's ·breach of duty, mitigating circumstances appear in his confession of wrong, his expressed willingness to retrieve his omissions, and, we believe, a sincere desire to re-establish himself. It would seem that the ends of justice would best be served by a limited suspension."

Whereupon, the local committee recommended thirty days' suspension. The board of bar governors approved and adopted the findings of the local committee but recommended suspension for a period of two years.

Notwithstanding the petitioner has expressed himself as satisfied with the sufficiency of the evidence and the findings of the local committee, the entire transcript of the proceedings before the local committee has been carefully examined for the purpose of appraising the respondent's omissions of duty and it appears therefrom that the findings and conclusions above quoted are a very fair summary of the facts brought out by the investigation. ▌ While, like the local committee's, our sympathy has been aroused by respondent's story, "domestic or other private embarrassments of the attorney in such matters cannot be accepted as extenuating circumstances, at least to the extent of absolving the petitioner from discipline on the record here presented." (*Ring* v. *State Bar*, 218 Cal. 747 [24 Pac. (2d) 821].)

▌ The petitioner was charged with and found guilty of neglect of his duties as an attorney, and we do not condone his offense, but the misconduct consists of dilatoriness and negligence and he is not charged with or found guilty of any conduct involving moral turpitude. He appears willing to do whatever lies in his power to compensate for his neglect. He acknowledges his responsibility and the justice of the disciplinary action, and asks only that the punishment be not so severe as to preclude any possibility of his regaining his place in the legal profession. Under the circumstances we think that suspension for the period of one year is a punishment which is both ample and just.

It is therefore ordered that the petitioner be suspended from practice as an attorney at law in this state for the period of one year from and after the date of the filing of this order.