[L. A. No. 22434.  In Bank.  Mar. 27, 1953.]

IRWIN M. LOWE, Petitioner, v. STATE BAR OF CALIFORNIA, Respondent.

John W. Preston for Petitioner.

Richard C. Heaton and Jerold E. Weil for Respondent.

THE COURT.—The petitioner, Irwin M. Lowe, seeks a review of a recommendation of the Board of Governors of The State Bar that he be disbarred from the practice of the

law. The Board of Governors approved and adopted findings of fact of a local administrative committee, which on these findings had recommended that the petitioner be suspended from the practice of law for a period of two years.

The events leading up to this proceeding against the petitioner began in July, 1948. For several years prior to that time he had represented Joe Diaz and Pilar Vargas in their legal matters. The two were brothers-in-law and partners in a restaurant business. They were of Mexican extraction and were uneducated. They had difficulty in understanding the English language and the legal aspects of business transactions. In July, 1948, they delivered to the petitioner a check for $750 made payable to him with instructions that it was to be used for the purchase of the interest of a minor nephew of Pilar Vargas in the estate of Refugio Vargas, the deceased father of Pilar and grandfather of the minor. The petitioner promptly deposited the proceeds of the check in his trust account in the Oxnard Branch of the Security-First National Bank of Los Angeles. He thereafter entered into negotiations with the proper representatives of the minor for the purchase of the latter's interest in the estate which consisted entirely of real property. The parties were unable to agree upon a satisfactory price. During the period of negotiations they found that there was a cloud on the title. They were unable to agree upon who should bear the costs of approximately $250 necessary to clear title. The petitioner failed to reach an agreement with the representatives of the minor, although negotiations continued for more than three years.

During the period of negotiations there were a great many deposits in and withdrawals from the petitioner's trust account. The balance varied over a wide range, and on numerous occasions it fell below $750, the amount entrusted to the petitioner by his clients. The petitioner's bank statement shows that in many instances checks were charged against the trust account leaving balances of less than $750, and in some of these instances the account was completely overdrawn. The petitioner admits that he was promptly informed of these overdrawals. A bank official testified that upon notification of an overdrawal the petitioner was always prompt in replenishing the account. The findings of fact recite that the petitioner "Wilfully and knowingly caused said trust funds to be withdrawn from said trust account and to be used for purposes other than those for which they

were entrusted to respondent, without the knowledge or consent of respondent's said clients.'' Upon the admitted facts this finding cannot rightfully be controverted but the further finding that ''in so misappropriating said trust funds respondent did not intend permanently to deprive said clients thereof,'' is also amply supported by the record.

The conduct described above formed the basis of the first act of misconduct set forth in the notice to show cause. Upon the findings quoted both the local administrative committee and the Board of Governors concluded that the petitioner was guilty of professional misconduct consisting of the violation of his duties as an attorney at law and that his conduct involved moral turpitude (Bus. & Prof. Code, §§ 6067, 6103, 6106).

As a second act of misconduct the notice to show cause charged that the petitioner made a false statement under oath in the Superior Court of the County of Ventura. In a proceeding in that court for an accounting by the administratrix of the estate of Refugio Vargas and at a time when the petitioner was not present in court the administratrix stated that the petitioner held certain funds for the estate. The record indicates that the administratrix apparently had reference to the $750 held by the petitioner for the purchase of the minor's interest, and that she erroneously thought the $750 had been paid into or on behalf of the estate. She, like the other members of the family, was uneducated and ignorant of business and legal transactions. She was not represented by counsel at the time of her statement. A citation was issued ordering the petitioner's presence at a continued hearing to be held on the morning of September 17, 1951. The citation was not served, but on that morning the petitioner informally learned that he should appear and he promptly did so. He contends that he was not fully aware of the reason he had been ordered to appear and that he knew only that the proceeding was one for an accounting of the assets, rents, issues and profits of an estate with which he was not connected. There is evidence in the record of that proceeding that the petitioner's two clients were under the impression that the purchase of the property interest had been consummated. However, the record furnishes no basis for a reasonable belief of this nature and the testimony of the two clients, derived through a Mexican interpreter, is conflicting and confusing. It is apparent that they did not understand the nature of their transaction

although they apparently had been kept informed of its development.

Under these circumstances the petitioner stated, in answer to inquiries by the court, that he did not have or had not had any money in the amount of approximately $750 that was to go to the representatives of a minor child for the purpose of purchasing the interest of the minor in the estate of Refugio Vargas. He later explained to the court that it did not occur to him that the court had reference to money he held for the purchase of the minor's interest if an agreement could be reached and that until an agreement was reached the money was not held for the purchase of the minor's interest.

Although the local administrative committee and the Board of Governors found that the petitioner's statement was not true, they further found that "when respondent [petitioner here] made said statement he mistakenly believed the Court desired to know whether respondent had in his possession, or had ever had, any funds of said estate or of said minor; and respondent intended by said statement to inform the Court that he did not have and had never had any funds of said estate or of said minor. That the information which respondent then and there intended to state to said Court was true." This amounts to a finding of an incorrect statement made without intent to deceive, and properly should be considered as a vindication of the misconduct charged in the notice to show cause in connection thereto.

At the same hearing the petitioner made the following statements to the court in answer to its inquiries:

The Court: "Have you ever used any of this money at any time under any circumstances or conditions for your own?"

The Petitioner: "No. It is in a trust account fund, separate and apart from my own funds."

The Court: "And at all times since the date this money was deposited, which was on apparently the 31st day of July, 1948, there has been in excess of $750.00 in that trust account, is that true?"

The Petitioner: "That is correct."

The true condition of the account during the period the petitioner held the $750 has been stated. The petitioner admits that the statement last recited was incorrect. He stated that it was made before he had an opportunity to refer to all of his books and records and that he had requested a continuance for this purpose. The findings state that the above

testimony "was false in that said trust account had been over-drawn four times between July 31, 1948 and September 17, 1951 and in that said trust account had contained balances of less than $750.00 at numerous times between July 31, 1948 and September 17, 1951."

The local administrative committee and the Board of Governors concluded that by the false statements in regard to the trust account the petitioner was guilty of professional misconduct in violation of his oath of office and his duties as an attorney (State Bar Act, §§ 6067, 6068(d), 6103, 6106, 6128(a)) and that such conduct involved moral turpitude.

From a review of the record it is evident that the petitioner did what he was charged with having done. He does not question the findings with reference to what took place. He does challenge the severity of the discipline recommended by the Board of Governors and the sufficiency of the evidence to support the findings as to his state of mind in connection with depleting his trust account below the sum of $750, and in stating to the court that the account had never fallen below that amount.

The petitioner attempts to excuse his failure to maintain $750 in his trust account on the ground that withdrawals in excess of that amount were unintentional. The account should have shown a balance at all times of $750 plus whatever other trust funds were deposited therein from time to time. While he insists that no improper withdrawals were made, and that there is no evidence that withdrawals from the account were for purposes other than those for which the account was intended to be used, he is unable to explain why the account was depleted below the $750. When asked to explain the reason for the recurring deficiencies to the local administrative committee he stated, "Well, I have mulled over that and tried my best to figure it out. I don't know whether some funds of some other funds were not deposited in the proper account or whether—I just can't give you an answer to that . . . I honestly don't know . . . I kept records but they are so scattered . . . I don't know—I honestly wish there was some way that I could discover for myself what has actually happened here. I honestly don't know. That is all." Statements of a similar nature were made to the Board of Governors.

The petitioner was the only one authorized to issue checks on the trust account, but he suggests that the condition of the account may have been due to the dishonesty of employees

entrusted with sums of money to be deposited therein. He offered no evidence of the suggested dishonesty. By his own admission he continued to make overdrafts against the account after he was informed by the bank that the account was overdrawn. Upon notice of an overdraft he would deposit personal funds in the trust account but during the three year period he never succeeded in correcting the deficiency in the account. The last overdrawal occurred in August, 1951, less than a month prior to his statement in court that the account had never been overdrawn.

The petitioner testified that he did not employ a bookkeeping system which would show a balance of funds he held in trust. He never knew, then, the level at which the trust account should have been maintained. Following his court appearance on September 17, he refunded the $750 to Pilar Vargas and Joe Diaz. Thereafter, he states, he succeeded in balancing his trust account but is still unable to discover the reason for the deficiencies. He reported that it required "some $2,000" of his personal funds to balance the account. He admits that the condition of the account indicated that he had commingled other trust funds with the $750 here in question.

The record shows that the petitioner was guilty of an unjustified omission to safeguard his clients' funds. ▮ It has been held that "Gross negligence is a breach of the fiduciary relationship that binds an attorney to the most conscientious fidelity to the interests of his client. [Citations.] It warrants disciplinary action, since it is a violation of his oath to discharge his duties to the best of his knowledge and ability." (*Clark* v. *State Bar*, 39 Cal.2d 161, 164 [246 P.2d 1] ; see, also, *Waterman* v. *State Bar*, 8 Cal.2d 17, 20 [63 P.2d 1133].) ▮ In the present case the record justifies the conclusion that the petitioner's conduct in overdrawing his account constituted more than negligence and carelessness on his part.

While it is true that the petitioner was called upon to answer the court's inquiries on short notice and without an opportunity to study his records, he answered unequivocally and without qualification that there had been in excess of $750 in his trust account at all times since the deposit therein. He stated before the Board of Governors that at the time he made his answer in court he couldn't remember in what year the $750 had been deposited in his trust account, or when the trust account had been overdrawn in connection with the deposit. The deposit had been made more than three

years previously; the last overdraft had occurred within the previous month and the petitioner admits that he had been informed on each occasion when he overdrew the account. The reasonable inference to be drawn from the admitted facts is that the petitioner knew, or was chargeable with knowledge, that the balance of his trust account had not been in excess of $750 at all times that the amount supposedly remained therein.

The untrue statement to the court by the petitioner was made in a proceeding for an accounting in the matter of the estate of Refugio Vargas. This proceeding had nothing to do with the condition of the petitioner's trust account. Whether the statement was material or immaterial to the inquiry before the court it nevertheless is denounced by section 6068(d) of the State Bar Act and constituted professional misconduct if made with the intention of deceiving the court. It is doubtful whether it had any influence on the action of the court in the accounting proceeding then before it.

From the foregoing it is concluded that the record supports the finding that the petitioner was guilty of professional misconduct and was properly subjected to disciplinary action. But under all of the circumstances disbarment appears to be out of proportion to the seriousness of the offenses committed. The ends of justice would fully be met by the suspension recommended by the local administrative committee.

It is therefore ordered that the petitioner be suspended from the practice of the law in this state for the period of two years, this order to become effective 30 days from the filing of this decision.

CARTER, J.—I dissent.

While I agree that petitioner was guilty of moral turpitude and should be disciplined for his conduct, I cannot agree that he should be suspended from practice for a period of two years. In my opinion, suspension from practice for a period of six months would be adequate under the facts disclosed by the record in this case.

Furthermore, I do not agree with the holding in the majority opinion that gross negligence of an attorney in handling his client's business warrants disciplinary action. In the absence of intentional wrongdoing, I do not believe it can fairly be said that an attorney has been guilty of conduct involving moral turpitude.

The record here clearly discloses that petitioner was guilty of conduct involving moral turpitude, although he apparently had no intention of defrauding his client, and no loss was suffered as a result of his misconduct.

For the foregoing reasons I would suspend the petitioner from practice for a period of six months.