[S. F. No. 19151.   In Bank.   Sept. 20, 1955.]

HARRISON W. CALL, Petitioner, v. STATE BAR OF
CALIFORNIA, Respondent.

Harrison W. Call, in pro. per., and Anthony J. Kennedy, for Petitioner.

Jerome R. Lewis and Garrett H. Elmore for Respondent.

THE COURT.—By this proceeding, petitioner seeks review of a recommendation of the Board of Governors of The State Bar that he be suspended from the practice of law for the period of one year.

Petitioner was admitted to practice law in this state in 1930. About the middle of May 1951 he was consulted by Lorenzo Crounse regarding the feasibility of contesting the will of Crounse's father, who had died in 1950 leaving an estate worth several hundred thousand dollars. The will bequeathed $10,000 to Crounse, the testator's only child, and contained a disinheritance clause under which any legatee or devisee who filed a contest was to receive $1.00 in lieu of his bequest or devise.

Crounse believed that his father had been subjected to duress and undue influence, and he employed petitioner about June 4, 1951, to undertake an investigation to determine whether or not the will should be contested. Crounse advanced $1,250 for this purpose, and he testified that he told petitioner at their first meeting that the will had been admitted to probate on January 12, 1951, and that he understood that a contest had to be filed within six months of that date, but petitioner replied that an heir could file at any time before distribution. Petitioner denied that Crounse ever mentioned such a limitation, and he testified that he made the "major blunder" of assuming that a contest could be filed at any time before distribution of the estate.

The six months' period for contesting the will (Prob. Code, § 380) expired on July 12, 1951, without a contest having been filed, and petitioner first discovered his error in March 1952. He then notified Crounse that it was too

late to file a petition, apologized for his error and offered to reimburse Crounse for the moneys expended. Thereafter he refunded the $1,250 advanced for investigation and also paid the amount which Crounse estimated he had incurred for traveling and other expenses.

At the time petitioner was first consulted by Crounse he was attorney for a trade association, and his duties took him out of the state during most of 1951. On June 19, 1951, petitioner's secretary wrote to Crounse acknowledging receipt of two checks and stating that petitioner was expected to return from the East in about a week and that "In the meantime, the investigation is proceeding in your matter." Subsequently Crounse tried unsuccessfully to telephone petitioner and talked to the secretary, who, under date of August 20, sent Crounse a letter stating that petitioner had asked her to write outlining the status of the case, that he had been to Omaha, where the decedent had previously lived, and expected to return there, that they had not located a male nurse whose testimony they hoped to get and that "We have delayed filing until the search has been completed, as there is no haste necessary at present."

In October Crounse received a letter from petitioner's secretary saying that petitioner was away and that "everything was proceeding along O.K., and the investigation was going along as best as could be expected." When Crounse called in November, he found that the telephone had been disconnected, and in December he received a telegram from petitioner to the effect that petitioner had been ill and in Washington most of the summer, that he had hoped to accomplish a negotiated settlement and it "may yet be possible," that the investigator's report was "promising but not yet complete" and that the contest would be filed as "soon as investigator files complete report."

Crounse testified that on December 31 he sent petitioner a letter stating that he wanted to know the time limitation for contesting and also the progress which had been made on the case. He did not hear anything from petitioner until about the middle of January when he went to petitioner's office and was told that petitioner had an investigator, a former FBI man, working on the case who was just about to turn in his full report, that petitioner was going to make up the complaint and that Crounse should come back the next day to sign it. The complaint was not ready on the following day, and petitioner said he would mail it, but he

did not do so. Under date of February 8, 1952, petitioner wrote Crounse to the effect that he was waiting "from day to day" for a final report from the investigator before filing the petition and that if it was not forthcoming within the next few days petitioner would forward the petition for signature but that he would like to have the report before making the filing. Not having received the petition by March 12, 1952, Crounse telephoned petitioner and was informed that petitioner had discovered his error as to the statute of limitations and that it was then too late to file a contest.

At the time Crounse first came to his office, petitioner had recently returned to practice after having been ill for three years with a heart disorder. Petitioner, who was then about to leave for Washington, D.C., discussed the matter with his secretary, gave her the names of certain investigators and instructed her to keep in touch with two attorneys who obtained for him a copy of the noncontest clause. He told her to deal with their office and to see if an investigator could be procured who would be willing to handle the investigation and give it proper time. Petitioner had these attorneys give him some information, and they made a "check" of the matter for him. Petitioner contacted the attorneys handling the probate to obtain information about the extent of the estate, the terms of the will and the contest clause, and to discover whether there was any likelihood of an offer of settlement. He had two or three talks with the attorney who drew the will to secure information about the estate and see if there was any basis for suspecting the testator's competency, and he was informed by this attorney that the testator had been competent and mentally capable.

A former member of the Highway Patrol was hired by petitioner as an investigator, and his reports to petitioner were made orally and mainly by telephone. The investigator learned that a doctor who treated the testator said that the testator was competent, and the investigator also talked to some relatives who furnished no support for a claim of incompetency. He went to a hospital and talked to a nurse, and he also talked at a bank and with some other people, but no evidence was located which would justify a contest. Petitioner was billed by the investigator, paid him a small amount and still owed the balance.

Petitioner made repeated efforts to reach the male nurse who had attended the testator and checked nurses lists and hospital lists but was unable to locate him. On two occasions

while on trips to the East petitioner stopped briefly in Omaha seeking information about the testator, who had formerly lived in that city, and he made other inquiries but he was unable to find anything on which to base a case for incompetency or undue influence.

Concerning petitioner's error regarding the time for filing a contest, he testified that when he was first consulted by Crounse his library had not been unpacked after moving and he did not even have a code in the office, so he just relied on his belief. He stated that this was the "biggest blunder" he had ever made but that he assumed and was of the honest belief that he could file a contest at any time prior to distribution. He testified that he prepared a draft of a contest, but apparently it was not completed until shortly before he discovered that the time for filing had expired.

The local administrative committee recommended a public reprimand after concluding that petitioner had not discharged the duties of an attorney at law to the best of his ability and that he was guilty of gross negligence and carelessness amounting to moral turpitude. The Board of Governors adopted the findings of the local committee and recommended a suspension of one year. One of the findings was that the following representations made by petitioner to Crounse were untrue: That "the investigation is proceeding in your matter," that the "investigator's report is promising but not yet complete," that "he had an investigator, former FBI man, working on the case," who "was just about to turn in his full report," and that petitioner was "waiting from day to day for a final report from the investigator" before filing a petition. The committee further found that very little investigative work was done, that no report was ever made and that no charge was made by an investigator for services.

The record establishes without dispute that petitioner employed an investigator, that considerable investigative work was done, that reports were made from time to time and that a charge was made by the investigator for his services. The evidence is in conflict with respect to whether petitioner stated that the investigator was a former FBI man, as testified by Crounse, or whether petitioner told Crounse that the investigator was a former member of the Highway Patrol, but the discrepancy is immaterial. While there is nothing in the record which would support a representation that the "investigator's report is promising," it may be that petitioner received some information from the investigator which

he then thought was "promising." In our opinion, the record will not support a finding that any material misrepresentation was made by petitioner to Crounse.

As we have seen, the board also concluded that petitioner was guilty of gross negligence and carelessness amounting to moral turpitude and that he had not discharged the duties of an attorney to the best of his ability. Since it has not been shown that petitioner was guilty of either intentional misrepresentation or wilful misconduct, the next question is whether discipline is warranted on the theory that petitioner's conduct amounted to negligence or gross negligence. Section 6106 of the Business and Professions Code provides that "The commission of any act involving moral turpitude, dishonesty or corruption . . . constitutes a cause for disbarment or suspension." Section 6067 provides that every person on his admission to practice shall take an oath that he will faithfully discharge the duties of an attorney at law "to the best of his knowledge and ability," and section 6103 specifies as a ground for discipline "any violation of the oath taken by him, or of his duties as such attorney." ▮ Negligence and gross negligence are not specified in these sections and apparently they do not come within the grounds stated unless the conduct involves moral turpitude or amounts to a violation of the attorney's oath or of his duties as an attorney. (See *Friday* v. *State Bar,* 23 Cal.2d 501, 505 [144 P.2d 564]; 1 Witkin, California Procedure (1954), 95 et seq.)

▮ The term moral turpitude includes fraud and has been said to mean dishonesty and conduct not in accordance with good morals; being based on moral guilt, it implies an intentional breach of the duty owed to a client as distinguished from an unintended failure to discharge his duties to the best of his ability. (*In re Hallinan,* 43 Cal.2d 243, 247-248 [272 P.2d 768]; *Fall* v. *State Bar,* 25 Cal.2d 149, 160 [153 P.2d 1]; *Herron* v. *State Bar,* 24 Cal.2d 53, 59-60 [147 P.2d 543]; *In re Hatch,* 10 Cal.2d 147, 151 [73 P.2d 885]; *Lantz* v. *State Bar,* 212 Cal. 213, 218-219 [298 P. 497]; *Marsh* v. *State Bar,* 210 Cal. 303, 307 [291 P. 583].) ▮ Some cases have said that gross negligence involves moral turpitude in that such conduct is a breach of his fiduciary duty, but in each instance there was misrepresentation or other improper action, and the statements must be read in the light of the additional facts. (*Stephens* v. *State Bar,* 19 Cal.2d 580, 582-583 [122 P.2d 549] [false representations]; *Trusty* v.

*State Bar*, 16 Cal.2d 550, 553-554 [107 P.2d 10] [misrepresentations]; *Waterman* v. *State Bar*, 8 Cal.2d 17, 20 [63 P.2d 1133] [habitual neglect and violation of Rules of Professional Conduct]; *cf. Marsh* v. *State Bar*, 210 Cal. 303, 306-307 [291 P. 583] [separate acts of negligence, together with some misrepresentation; suspension for one year].) The more recent cases have omitted reference to moral turpitude in discussing gross negligence but have held that such conduct warrants disciplinary action on the theory that the attorney has violated his oath. (*Lowe* v. *State Bar*, 40 Cal.2d 564, 570 [254 P.2d 506]; *Clark* v. *State Bar*, 39 Cal.2d 161, 174 [246 P.2d 1].)

In other cases discipline has been imposed where there was negligent conduct which was not declared to be gross negligence, but in most, if not all, instances there was also misrepresentation or other improper conduct. (*Herron* v. *State Bar*, 24 Cal.2d 53, 60-62 [147 P.2d 543] [disbarment where failure to make oral argument on appeal, failure to protect client's interest in quiet title action and practice while under suspension in a prior proceeding]; *Eschwig* v. *State Bar*, 24 Cal.2d 70 [147 P.2d 529] [reprimand where several months' failure to attend to litigation and failure, despite repeated requests, to return contract on which action was based or advise client of its disappearance]; *Trusty* v. *State Bar*, 16 Cal.2d 550, 554 [107 P.2d 10] [suspension for 30 days where neglect to secure judgment for six years after entry of minute order granting divorce and conduct involved active misrepresentation]; *Farrar* v. *State Bar*, 1 Cal.2d 359 [34 P.2d 1024] [one year suspension where failure to establish birth for eight months, failure to act in probate for several years after issuance of letters and apparently false intimation that proceedings had been brought]; *Rehart* v. *State Bar*, 217 Cal. 57 [16 P.2d 993] [suspension for three months where attorney, given money for surety bond premium and fee for probate, failed to pay premium or complete probate].) ██ The cases cited above are in accord with the rule in other jurisdictions where it has been held that inattention to duty which has been wilful or has been accompanied by an element of deceit is ground for discipline. (See 69 A.L.R. 705, 707.)

██ An attorney may be disciplined for a violation of his oath to discharge his duties to the best of his knowledge and ability, but mere ignorance of the law in conducting the affairs of a client in good faith is not cause for discipline.

(Bus. & Prof. Code, §§ 6067 and 6103; see *Friday* v. *State Bar,* 23 Cal.2d 501, 505 [144 P.2d 564].) ■ The good faith of an attorney is a matter to be considered in determining whether discipline should be imposed for acts done through ignorance or mistake. (See *In re Kling,* 44 Cal.App. 267, 271 [186 P. 152].)

■ All that is established here is that petitioner mistakenly believed in good faith that he had ample time to file a contest on behalf of his client and that because of this mistake he failed to act in time. The imposition of discipline is therefore not warranted.

The proceeding is dismissed.

CARTER, J.—I concur in the result reached by the court. I agree with the opinion insofar as it expresses the rule that negligence of an attorney is not a proper ground for disciplinary action. I do not, however, approve of the holding of the majority in the following cases cited in the opinion for the reasons stated in the concurring or dissenting opinions thereto. (See *Trusty* v. *State Bar,* 16 Cal.2d 550 [107 P.2d 10], dissenting opinion at p. 554; *In re McKenna,* 16 Cal.2d 610 [107 P.2d 258], dissenting opinion at p. 612; *Stephens* v. *State Bar,* 19 Cal.2d 580 [122 P.2d 549], concurring opinion at p. 584; *Herron* v. *State Bar,* 24 Cal.2d 53 [147 P.2d 543], dissenting opinion at p. 68; *Clark* v. *State Bar,* 39 Cal.2d 161 [246 P.2d 1], dissenting opinion at p. 175; *Lowe* v. *State Bar,* 40 Cal.2d 564 [254 P.2d 506], dissenting opinion at p. 571.) The holding of the majority in the case at bar appears to be in accord with the views expressed by me in my concurring and dissenting opinions in the above cited cases, with which view I am still in accord.