TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 92-304 |
| of | : | |
| | : | March 26, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE KEN MADDY, MEMBER OF THE CALIFORNIA SENATE, and THE HONORABLE BILL JONES, MEMBER OF THE CALIFORNIA ASSEMBLY, have requested an opinion on the following question:

May a member of the State Board of Equalization remain in office after entering a plea of nolo contendere to a misdemeanor charge of violating Penal Code section 72?

CONCLUSION

A member of the State Board of Equalization may not remain in office after entering a plea of nolo contendere to a misdemeanor charge of violating Penal Code section 72 involving a violation of official duties; suspension from office takes place upon the entry of the plea and the office becomes vacant when the trial court judgment is entered.

ANALYSIS

The question presented for resolution concerns the effect of a plea of nolo contendere[1] which was entered on February 21, 1992, by a member of the State Board of Equalization ("Board") to a misdemeanor charge of violating Penal Code section 72,[2] filing a false

---

[1]The Latin phrase means "I will not contest it." The court is required to "ascertain whether the defendant completely understands that a plea of nolo contendere plea shall be considered the same as a plea of guilty . . . ." (Pen. Code, § 1016.)

[2]Penal Code section 72 provides in pertinent part as follows:

"Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state

claim with intent to defraud.[3]  The Board member entered his plea to a single count in exchange for dismissal of 22 similar counts.  All 23 counts involved claim forms submitted by the member with his typed notation:  "Administration of Tax Programs Requiring Travel Expenses."[4]

A member of the Board is a civil executive officer of the state (Gov. Code, § 1000)[5] and is exempt from civil service (Cal. Const., art. VII, § 4.)  Pursuant to section 15603, a member of the Board "shall devote his entire time to the services of the state in performing the duties imposed upon the board and its members by the Constitution and statutes of this State."

The Constitution sets forth the basic conditions under which a person may be required to relinquish public office because of misconduct:  "Laws shall be made to exclude persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes from office or serving on juries. . . ."  (Cal. Const., art. VII, § 8, subd. (b).)[6]  With respect to this constitutional provision, the court noted in *Lubin* v. *Wilson* (1991) 232 Cal.App. 1422, 1426:  "Although the section is mandatory, it is not self-executing and requires legislation to give it effect.  (*Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 420)."

To the extent pertinent here, legislation implementing the Constitution is found in section 1021, which provides that a person is disqualified from holding any office upon conviction of designated crimes as specified in the Constitution and laws of the state, in section 3000, which provides that an officer forfeits his office upon conviction of designated crimes as specified in the Constitution and laws of the state, and in section 1770.  Section 1770 states:

"An office becomes vacant on the happening of any of the following events before the expiration of the term:

". . . . . . . . .

"(h) His or her conviction of a felony or of any offense involving a violation of his or her official duties.  An officer shall be deemed to have been convicted under

---

prison, by a fine of not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

[3]A violation of Penal Code section 72 is punishable as either a felony or a misdemeanor; in this case a plea to a misdemeanor charge was accepted by the District Attorney with a waiver under *People* v. *Harvey* (1979) 25 Cal.3d 754, which allowed the trial court to consider the facts of all dismissed counts in passing judgment.  The court ordered the Board member to perform 200 hours of community service, pay a fine of $1,000, and give restitution of $5,500.  The Board member was placed on probation for one year.

[4]The travel claims in question were for short-term in-state travel.  Reimbursement was then authorized by the Board's Administrative Manual section 2912 (State Administrative Manual, § 0761) which provided that employees on travel status for more than one 24-hour period may claim the per diem subsistence allowance.  The specific count to which the Board member pleaded nolo contendere involved travel claims for expenses he claimed to have incurred in connection with Board meetings held in Sacramento during the period of May 31 through June 3, 1988.  The Board member returned to his headquarters the night of each Board meeting and therefore was not on travel status for more than 24 hours and was not entitled to the full subsistence allowance he claimed.

[5]All section references are to the Government Code unless otherwise specified.

[6]Under section 18 of article IV of the Constitution, state officers elected on a statewide basis, members of the Board, and judges of state courts are also subject to impeachment for misconduct in office.  This process is not at issue here.

this subdivision when trial court judgment is entered.  For the purposes of this subdivision, `trial court judgment' means a judgment by the trial court either sentencing the officer or otherwise upholding and implementing the plea, verdict, or finding.

".........."

The last sentence of subdivision (h) of section 1770 was added in 1988 (Stats. 1988, ch. 283, § 1) along with section 1770.2.  Section 1770.2 states in part:

"Upon the entry of a plea of guilty, the entry of a plea of nolo contendere, or the rendering of a verdict of guilty either by a jury or by the court sitting without a jury of a public offense, the conviction of which would invoke the provisions of Section 1021, subdivision (h) of Section 1770, or Section 3000, the person found guilty shall not assume the office for which the person is otherwise qualified or shall be suspended immediately from the office the person then holds.  During the time of inability to assume an office or of suspension from office, the person shall not be entitled to receive the emoluments of the office, including, but not limited to, the exercise of the powers of the office, the rights to be seated in the office, and the compensation, including benefits, prescribed for the office."

As the result of the Board member's entry of a plea of nolo contendere, he was "suspended immediately from office" if the offense "would invoke the provisions of . . . subdivision (h) of Section 1770."  (§ 1770.2.)  An offense invokes the provisions of subdivision (h) of section 1770 if it involves "a violation of his or her official duties."  When an officer is sentenced for such offense, his or her office "becomes vacant."  (§ 1770.)[7]

We first address the issue whether subdivision (h) of section 1770 is applicable when, as here, the offense occurred during a prior term of office.  Under subdivision (h) of section 1770, the vacancy occurs "upon conviction."  The events mentioned that cause a vacancy in office "are merely conditions, upon the occurrence of any one of which the legislature has declared the office shall become vacant, not as a penalty or forfeiture, but simply as the legal effect of the happening of any one of the events mentioned."  (*People* ex rel. *Fleming* v. *Shorb* (1893) 100 Cal. 537, 540.)

This situation is to be distinguished from that presented under the removal from office statutes (§ 3060; former Pen. Code, § 758 et seq.) which require a public officer's removal for misconduct in office after a grand jury accusation of willful misconduct.  (*People* v. *Cherry* (1989) 209 Cal.App.3d 1131, 1133.  ["Removal statutes being criminal in nature, were construed strictly, and it was thought that the election process would weed out (or condone) officers alleged to have been guilty of misconduct in a prior term"].)

Subdivision (h) of section 1770 does not turn on the "in office" language and has always been considered as being essentially different in nature from the removal from office statutes. The issue of whether subdivision (h) may trigger a vacancy when the misconduct occurs during the officer's prior term was expressly resolved in *Lubin* v. *Wilson, supra,* 232 Cal.App.3d at 1427; the

---

[7]We are thus not concerned with the effect of a plea of nolo contendere for purposes of the Penal Code or any civil suits that would be based upon the acts of the underlying criminal prosecution.  If sections 1770 and 1770.2 are applicable here, suspension from office is required by entry of the nolo contendere plea and the office becomes vacant upon the entry of judgment, as defined, regardless of what plea originally was entered.

court stated that "the fact the charges stemmed from activities during Carpenter's senate term [which preceded his current term of office] does not cloud the statute's applicability."

The remaining question to be addressed is whether the offense for which the Board member was convicted is one which involves a violation of his official duties.[8]  Section 15606 sets forth the powers and duties of the Board.  It provides in pertinent part that the Board shall "[p]rescribe rules for its own government and for the transaction of its business."  The Board has adopted Travel Expense Claim Form (GA-262) which requires that the entries made thereon constitute "a true statement of the travel expenses incurred by me in accordance with [Board of Equalization Administrative Manual] Section 3214 in the service of the State of California and that all items shown were for the official business of the State of California . . . ."  Section 3214 of the Board's Administrative Manual [now Travel Guide Section 6040] provides in relevant part:

"The claimant is responsible for the preparation of his own travel expense claim.  He may have someone else type it, in which case he should review it and check for errors or omissions before signing.  The claimant's signature is certification as to the truth of the statement of expenses.  No one may sign for him unless he is permanently unable to sign."

Thus the Board has adopted specific procedures for the purpose of reimbursing Board members' legitimate expenses.  If a Board member wishes to claim reimbursement for the payment of expenses, he or she must provide truthful information.  Instead, as established by the criminal charge in question, the Board member here submitted a false claim "with intent to defraud."

It is of no consequence that the task of filing travel claims may be considered technical or ministerial in nature.  In *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811, 825, the court explained:

"As was declared in *White* v. *Towers* (1951) 37 Cal.2d 727, 733, `"Duties of public office include those lying squarely within its scope, those essential to accomplishment of the main purposes for which the office was created, and those which, although only incidental and collateral, serve to promote the accomplishment of the principal purposes." (*Nesbitt Fruit Products* v. *Wallace*, 17 F.Supp. 141, 143).'"

In *Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 206, the Court of Appeal cogently stated:

"A public office is a public trust created in the interest and for the benefit of the people.  Public officers are obligated, *virtute officii*, to discharge their responsibilities with integrity and fidelity.  Since the officers of a governmental body are trustees of the public weal, they may not exploit or prostitute their official position for their private benefits.  When public officials are influenced in the performance of their public duties by base and improper considerations of personal advantage, they violate their oath of office and vitiate the trust reposed in them, and the public is injured by being deprived of their loyal and honest services."

These basic obligations of a public officer are central to the state's interest in the vacating of a public office when there has been a violation of official duties.  As noted by the court in *Lubin* v. *Wilson*,

---

[8]The legal effect of any official acts undertaken by the Board member after the entry of his plea or after the entry of the trial court's judgment is beyond the scope of this opinion.

*supra*, 232 Cal.App.3d at 1429: "The statutory scheme [sections 1770, 1770.1, and 1770.2] advances the compelling interest for honesty, integrity and confidence of the public in government, which is greater than the convicted person's interest in the office." A violation of Penal Code section 72 is antithetical to that state interest because, as a crime of moral turpitude, it establishes that the guilty party is lacking in honesty and is not worthy of the trust and confidence of the public. (See *In re Hallinan* (1954) 43 Cal.2d 243.)[9]

We do not have here an offense that involves purely "private" conduct. (See *Pettit* v. *State Board of Education* (1973) 10 Cal.3d 29, 34-35; *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 223; *Orloff* v. *Los Angeles Turf Club, Inc.* (1951) 36 Cal.2d 734, 741.) Rather, it is conduct that is detrimental to the state itself and bears a direct relationship upon the fitness to perform official state duties. (See *Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 467, 471-472.) Because the victim of this crime of moral turpitude is the public, the very party whom the public officer was elected to represent, a violation of duties owed to the public is clearly involved. As was noted in the context of duties owed by an attorney to his client:

"The term moral turpitude includes fraud and has been said to mean dishonesty and conduct not in accordance with good morals; being based on moral guilt, it implies intentional breach of the duty owed to a client as distinguished from an unintended failure to discharge his duties to the best of his ability." (*Call* v. *State Bar* (1955) 45 Cal.2d 104, 109.)

The Board's responsibilities include administering the tax laws of the state, including those imposing penalties for fraud. A Board member must be able to determine whether a person has complied with the laws of the state or has intended to defraud the state. The conviction for a violation of Penal Code section 72, based on an intent to defraud the state by the filing of a false claim, establishes the unfitness of the Board member in question to make this and other important and serious determinations in the discharge of his duties of office. (See *Pettit* v. *State Board of Education, supra,* 10 Cal.3d at 34-36; *Morrison* v. *State Board of Education, supra,* 1 Cal.3d at 224-226.)

The offense here constitutes an abuse of the privileges of office (see *In re Rothrock* (1940) 16 Cal.2d 449, 455) and prevents the Board member from being an exemplar for others in dealing with the state (see *Pettit* v. *State Board of Education, supra,* 10 Cal.3d at 36).

In summary, a public officer's filing of a false claim with intent to defraud the state is an exploitation of the officer's position for private gain; it deprives the state of funds and robs the position of its integrity. The citizenry must have trust and confidence in the decisions of the Board

---

[9]Since an intent to defraud is an essential element of a violation of Penal Code section 72, the Board member stands convicted of a crime of moral turpitude which, in other contexts, would result in the summary revocation of a professional license:

"Although the problem of defining moral turpitude is not without difficulty [citations], it is settled that whatever else it may mean, it includes fraud and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. [Citations.] It is also settled that the related group of offenses involving intentional dishonesty for purposes of personal gain are crimes involving moral turpitude. [Citations.] . . . We see no moral distinction between defrauding an individual and defrauding the government [citation], and an attorney, whose standard of conduct should be one of complete honesty [citation], who is convicted of either offense is not worthy of the trust and confidence of his clients, the courts, or the public, and must be disbarred, since his conviction of such a crime would necessarily involve moral turpitude." (*In re Hallinan*, *supra*, 43 Cal.2d at 247-248.)

when the Board sits in judgment of those asserting that they have complied with the laws of the state. Board members must not be seen as violating laws designed to ensure the proper expenditure of taxpayer funds. A faithful execution of the public trust is central to the official duties of a Board member.

We therefore conclude that a member of the Board may not remain in office after entering a plea of nolo contendere to a misdemeanor charge of violating Penal Code section 72 involving a violation of official duties; suspension from office takes place immediately upon entry of the plea and the office becomes vacant when the trial court judgment is entered.

* * * * *